881 So.2d 1257 (2004)
Theodore O. OSTER
v.
WINN-DIXIE LOUISIANA, INC. and Winn-Dixie Stores, Inc.
No. 04-CA-117.
Court of Appeal of Louisiana, Fifth Circuit.
August 31, 2004.
*1258 Joseph W. Rausch, Metairie, LA, for Plaintiff/Appellant.
Robert E. Peyton, Alison A. Bradley, New Orleans, LA, for Defendant/Appellee.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
Theodore Oster appeals the summary judgment dismissing his slip-and-fall suit against Winn-Dixie Louisiana, Inc. For the following reasons we affirm.
The accident occurred on May 18, 2001 at about 11:56 p.m., at Winn-Dixie Marketplace Store # 1404, 8601 Jefferson Highway, River Ridge. While shopping in the toiletries aisle of the store, Oster slipped on a piece of plastic or cellophane on the floor, causing him to fall backward and strike his head on the jagged edge of a steel display shelf.
Oster filed suit against Winn-Dixie Louisiana, Inc. and Winn-Dixie Stores, Inc. (hereafter jointly referred to as "Winn-Dixie"), contending that the accident was due to the negligence and fault of the defendants in littering the shopping aisle of the store with clear plastic trash, and that the jagged edge of the display shelf created an unreasonably hazardous/dangerous condition on the premises. He alleged liability under La.R.S. 9:2800.6, and under La.C.C. art. 2317 et seq.
Winn-Dixie filed a motion for summary judgment, arguing that it had no knowledge, either actual or constructive, that the piece of plastic existed on the floor prior to accident. It also asserted that Oster had no personal knowledge of where the plastic or cellophane came from or how long it had been on the floor.
In opposition, Oster contended that his deposition and the depositions of Winn-Dixie managers created a genuine issue of material fact as to whether the store personnel created the hazard of trash on the floor while stocking products for sale on its shelves, thus vitiating the requirement of prior knowledge, and that the staggered shelf with exposed sharp edge upon which he struck his head was an unreasonably dangerous/hazardous condition.
The trial court granted summary judgment. On Oster's request, the court subsequently issued written reasons for judgment stating the basis for its judgment:
*1259 Under La.R.S. 9:2800.6(B)(2), the plaintiff has the burden of proving that the merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence. Plaintiff testified that he does not have any personal knowledge as to how the cellophane got on the floor or how long it was on the floor before his fall. Therefore, by the plaintiff's own testimony, plaintiff cannot prove that defendant had actual or constructive notice of the alleged hazard.
In addition, the plaintiff has no proof that the store created the hazard that allegedly caused the fall. This unfounded allegation is contradicted by all of the testimony and evidence. First, both store managers, in their depositions, testify that no stocking was done in the aisle where the accident occurred. Second, both managers described the cellophane wrapper as being very thin and that is appeared to have come off of a pack of cigarettes, not from stocking in the store. In fact, one manager emphatically testified that the wrapper in question did not look like a piece of shrink wrap from restocking and was "not even close" to looking like any restocking material. Plaintiff's failure to produce any evidence as to whether Winn-Dixie created or knew of the hazard on the floor is fatal to his claim.
As for his claim under Civil Code Articles 2317 and 2317.1, the plaintiff has the burden of proving that the owner or custodian of a thing knew of the defect. Plaintiff has presented no testimony or evidence as to the condition of the shelf prior to his falling into it.
Plaintiff has presented no evidence (1) of when the alleged condition was created and (2) who created the alleged condition, or (3) that any Winn-Dixie employee knew about the alleged hazard prior to his fall.
On appeal Oster contends the trial court erred in granting summary judgment because doing so required the court to decide disputed issues of material fact and to make credibility determinations.
Summary judgment now is favored. La.C.C.P. art. 966(A)(2). When sufficient time has been allowed for discovery, the courts will assess the proof submitted by the parties equally, without the former presumption in favor of trial on the merits, in order to dismiss meritless litigation.[1] Under this standard, the appellate courts review motions for summary judgment de novo.[2] In conducting a de novo review, appellate courts use the same criteria that govern the district court's consideration of whether summary judgment is appropriate.[3]
La.C.C.P. art. 966(C)(2) provides that in summary judgment proceedings the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, if the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material *1260 factual dispute mandates the granting of the motion.[4]
In connection with the Motion for Summary Judgment, Oster's deposition was admitted. In it, he stated that the accident happened right across from the pharmaceutical company; it was as if somebody pulled his leg forward and up, and he fell, hitting his head. He passed out. The manager, or other employee, showed him the cellophane and told him that's where he had fallen. Before that, he had not seen the cellophane, which was as big as a shoe. He did not know where the cellophane came from, but the employee "said something about the packaging. I don't know ... you know, things they are stocking." He only knew what was implied to him by the employee. He did not see anybody stocking in the area.
Brian Brocato, a manager at the store, was not there at the time of the accident but was involved in preparing the accident report. The report was based on information provided by assistant manager James Cavalier. Brocato saw the piece of cellophane, and said it was about two inches long by one inch wide, and looked as if it came off a pack of cigarettes. It did not look like shrink wrap from stock shelves. There was no stocking going on in that aisle at that time of night. However, the cellophane, and photograph taken of it, along with a copy of the zone log and accident report, was mailed to the Risk Management Department at the Florida headquarters. Brocato unsuccessfully tried to contact Oster several times. According to Brocato, the staggered shelf on which Oster struck/sliced his head is not a usual feature in the store and "would instantly be fixed."
James Cavalier read from the accident report. A customer found Cavalier to report Oster had slipped on the floor, and that the only thing on the floor was cellophane. The other customer did not leave his name. Cavalier also described the cellophane as small, like from a cigarette pack, perhaps 1 1/2 to 2 inches. He put the cellophane in an envelope, and gave it to Brocato. Store records show that safety sweeps were made every half-hour, and that one was conducted beginning at 11:30 p.m. that evening.
La.R.S. 9:2800.6 establishes the burden of proof in claims against merchants as follows:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure *1261 is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.
A plaintiff must prove each of three elements set forth in section B; failure to prove any of these required elements will prove fatal to a plaintiff's claim.[5] Where a claimant is relying upon constructive notice under La. R.S. 9:2800.6(B)(2), the claimant must come forward with positive evidence showing that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence.[6] This element is referred to as the "temporal" element. Absent some showing of the temporal element, there can be no inference of constructive knowledge. While there is no bright line time period, a plaintiff must show that the condition existed for "such a period of time."[7] While the claimant must make a positive showing of the existence of the condition prior to the fall, a defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall.[8] A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute.[9] Because it is the claimant's burden to prove the existence of the condition for some period of time, the absence of evidence can not support the claimant's cause of action. Rather, the absence of evidence is fatal to the claimant's cause of action.[10]
In the present case, none of the evidence showed, or tended to show, that the condition existed for some time before the fall. Therefore, Oster did not establish that he would be able to satisfy his evidentiary burden at trial.
Further, as the trial court found, in asserting a claim for negligence based on strict liability it is incumbent on the plaintiff to prove that the defendant had or should have had knowledge of the alleged *1262 defect.[11] Regarding the condition of the staggered shelves, no evidence was presented as to actual or constructive knowledge of this condition prior to the fall, nor was there evidence of when this condition was created, or by whom.
Our de novo review discloses no genuine issues of material fact that would preclude summary judgment. For these reasons, the judgment is affirmed. Oster is assessed costs of this appeal.
AFFIRMED.
CHEHARDY, J., dissents with reasons.
CHEHARDY, J., Dissents.
I would reverse and remand. In my view, the trial court erred in granting summary judgment because doing so required the court to decide disputed issues of material fact and to make credibility determinations.
Oster's deposition and the depositions of Winn-Dixie managers create genuine issues of material fact as to whether the store personnel created the hazard of trash on the floor while stocking products for sale on its shelves, thus vitiating the requirement of prior knowledge, and that the staggered shelf with exposed sharp edge upon which he struck his head was an unreasonably dangerous/hazardous condition.
Oster testified in his deposition that a Winn-Dixie manager told him at the time of his fall that the cellophane wrapper trash upon which he slipped came from shelf product packaging dropped during stocking of the shelves, which stocking was done by Winn-Dixie employees.
Winn-Dixie store manager Brian Brocato stated in his deposition that the cellophane trash was last in his possession when he knew of Oster's injury in the fall and when Brocato prepared the "customer accident form," but the trash has now "disappeared"; the staggered shelf with exposed sharp edge/point on which Oster struck/sliced his head was an unacceptable condition which "would instantly be fixed"; the staggered shelf with exposed sharp edge/point is not a usual feature in the store; the staggered shelf with exposed sharp edge/point has no business purpose to Winn Dixie; the staggered shelf with exposed sharp edge/point would be something that you generally would not have in a store; the store's assistant manager would have photographed the cellophane trash as part of his incident-handling instructions, but any photograph of the trash has now "disappeared."
The Winn-Dixie personnel said the trash was only the size of a postage stamp, while Oster described the trash as maybe as big as a shoe. Further, there is a clear conflict in testimony between Oster and the Winn-Dixie store manager, Brocato, regarding whether the store manager told Oster the plastic came from the shelf product stocking packages while employees were stocking the shelves. Thus, there is conflict concerning the size and type of plastic that was on the floor, as well as whether the store created the condition.
When the merchant created the condition, the injured party need not prove how long the condition existed or whether the merchant had actual or constructive knowledge of it. La.R.S. 9:2800.6(B)(2).
A trial judge cannot make credibility determinations on a motion for summary judgment. Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533, p. 8 (La.2/20/04), 866 So.2d 228, 234.
*1263 The court's error in this case was a legal error that should be corrected by reversal of the summary judgment.
NOTES
[1] Hardy v. Bowie, 98-2821, pp. 4-5 (La.9/8/99), 744 So.2d 606, 609-610, quoting Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.
[2] Id.
[3] Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991).
[4] Hardy v. Bowie, 98-2821, supra.
[5] White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081.
[6] Id.
[7] Kennedy v. Wal-Mart Stores, Inc., 98-1939 (La.4/13/99), 733 So.2d 1188.
[8] See White v. Wal-Mart Stores Inc., supra; Oliva v. Winn-Dixie Louisiana, Inc. 99-831 (La.App. 5 Cir. 1/4/00), 756 So.2d 444.
[9] Id.
[10] White v. Wal-Mart Stores, Inc., supra.
[11] Haley v. Roberts, 02-30 (La.App. 5 Cir. 5/29/02), 820 So.2d 1114.