## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 30, 2020

No. 19-30768

Lyle W. Cayce

Clerk

RAMONA MCDOWELL; CLIFF MCDOWELL,

Plaintiffs - Appellants

v.

WAL-MART STORES, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:17-CV-1712

Before STEWART, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:*

Ramona McDowell appeals the district court's grant of summary judgment on her claims arising from her fall in a Wal-Mart store. We AFFIRM.

## I.  Background

In 2016, McDowell went shopping at a Wal-Mart store in Louisiana. While shopping, McDowell slipped and fell on a grocery aisle. The Wal-Mart

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

manager and employees at the scene acknowledged that there was water on the floor, and an employee was instructed to place a "wet floor" sign by the area after McDowell's fall.  McDowell then noticed that her pants were wet.  She claims that she sustained severe knee injuries as a result of the fall.  She asserts that she does not know where the water came from or whether any Wal-Mart employees knew about the water before her fall.  McDowell's fall was not captured on video, but two surveillance videos captured part of one entrance to the aisle and all of the other entrance.  The videos show numerous customers entering the aisle in the minutes leading up to McDowell's fall.[1]

McDowell avers that no employees or other customers were on the aisle when she entered it.  But the surveillance footage contradicts her claim.  It shows at least two other customers entering the aisle before McDowell and exiting after the events in question.[2]  Indeed, McDowell contradicts herself and admits that both customers entered the aisle as shown—and that at least one was "on the aisle when the fall occurred"—when she argues that neither customer was the source of the water that caused her fall.

A Wal-Mart maintenance employee testified that maintenance personnel were responsible for walking through the aisles to check for spills.  A Wal-Mart asset protection manager confirmed that maintenance employees are responsible for walking the aisles "constantly" to look for hazards.  No Wal-

---

[1] For example, less than ten minutes before McDowell enters the aisle, surveillance footage shows a man with what appears to be an empty cart entering the aisle.  Less than a minute later, a woman with a full cart enters the aisle.  Then, a man with what looks to be a gallon of milk in his cart follows.  About five minutes before McDowell's fall, a woman with a small child and full cart enters the aisle.

[2] The surveillance footage shows a female customer in a motorized cart entering the aisle around ninety seconds before McDowell's fall and exiting over sixty seconds after it.  It also shows a male customer entering the aisle about twenty seconds before McDowell's fall and exiting the aisle approximately twenty seconds after her fall.  Additionally, because one video shows only part of the entrance to the aisle, more customers may have entered or exited the aisle without appearing on the video.

Mart employees traversed the aisle in the hour leading up to McDowell's fall. Instead, employees walked past—and looked down—the aisle three times in the ten minutes leading up to McDowell's fall. A Wal-Mart employee last looked down the aisle about thirty seconds before the fall.

After the accident, McDowell sued Wal-Mart in Louisiana state court. Wal-Mart removed to federal court on diversity grounds. It then moved for summary judgment. The district court granted Wal-Mart's motion, holding that McDowell had failed to show that Wal-Mart had actual or constructive notice of the water as required by Louisiana law. McDowell timely appealed.

## II.    Standard of Review

We review a district court's grant of summary judgment de novo. *Bagley v. Albertsons, Inc.*, 492 F.3d 328, 330 (5th Cir. 2007). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

In reviewing a grant of summary judgment, we generally view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmovant. *Bagley*, 492 F.3d at 329 n.1. But when a party's testimony "is blatantly contradicted by the record [such as by a videotape], so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.    Discussion

McDowell's negligence claim is governed by the Louisiana Merchant Liability Statute. That statute provides:

> [T]he claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

No. 19-30768

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care.

LA. REV. STAT. ANN. § 9:2800.6(B).

McDowell does not claim that Wal-Mart created or had actual notice of the water on which she slipped. Thus, to survive summary judgment, she must present evidence creating a genuine factual dispute as to whether Wal-Mart had constructive notice of the water before her fall. *Id.* § 9:2800.6(B)(2). Under Louisiana law,

> "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

*Id.* § 2800.6(C)(1).

"The Louisiana Supreme Court has interpreted [the constructive notice] statute to mean that the plaintiff has the burden of showing the dangerous condition existed for some discrete period of time; it is not enough simply to show that the condition existed before the plaintiff's injury." *Adams v. Dolgencorp, L.L.C.*, 559 F. App'x 383, 385 (5th Cir. 2014) (per curiam). "The statute 'places a heavy burden of proof on plaintiffs' in slip and fall cases." *Bagley*, 492 F.3d at 330 (quoting *Jones v. Brookshire Grocery Co.*, 847 So. 2d 43, 48 (La. Ct. App. 2003)).

No. 19-30768

To show constructive notice, "the claimant must come forward with positive evidence showing that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence." *White v. Wal-Mart Stores, Inc.*, 699 So. 2d 1081, 1082 (La. 1997).  As we have stated, "[w]hether the period of time that a condition existed was sufficient to provide a merchant with constructive notice is a fact question that must be submitted to the jury." *Bagley*, 492 F.3d at 331.  "[H]owever, there remains the prerequisite showing of some time period." *Id.* (quoting *Allen v. Wal–Mart Stores, Inc.*, 850 So. 2d 895, 898 (La. Ct. App. 2003)).  While we have refused to adopt a bright-line time requirement, "some positive evidence is required of how long the condition existed prior to the fall." *Bagley*, 492 F.3d at 331 (quoting *Robinson v. Brookshires # 26*, 769 So. 2d 639, 642 (La. Ct. App. 2000)).

McDowell points to no positive evidence of how long the water on which she fell was there before her accident.  *See Bagley*, 492 F.3d at 331.  She has presented no surveillance footage of the spill, the water on the ground, or her fall; nor has she provided any other evidence such as testimony.  Instead, she speculates on the likelihood that various customers caused the spill.  But "[m]ere speculation . . . is not sufficient to meet [McDowell's] burden, and [we] will not infer constructive notice for purposes of summary judgment where [her] allegations are no more likely than any other potential scenario." *Taylor v. Wal-Mart Stores, Inc.*, 464 F. App'x 337, 339 (5th Cir. 2012) (per curiam) (quoting *Bagley*, 492 F.3d at 330).

Indeed, the evidence in this case demonstrates that two other customers were on the aisle when McDowell fell.  McDowell denies that any other customers were on the aisle at that time.  But the surveillance footage contradicts her claim.  McDowell even contradicts *herself*: she admits that two customers entered the aisle as shown—and that at least one was "on the aisle

5

when the fall occurred"—when she argues that neither customer was the source of the water that caused her fall.

When reviewing a grant of summary judgment, we generally view the facts in the light most favorable to the nonmovant, but when a party's testimony "is blatantly contradicted by the record, so that no reasonable jury could believe it, [we will] not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. Such contradiction exists when, as here, a party's testimony is belied by video evidence that neither party says is inaccurate. *Id.* at 378. Given that two other people entered the aisle in the ninety seconds before McDowell did and, by all indications, exited after the events in question, the water on which McDowell slipped could have appeared mere seconds before her accident. *See supra* n.2. McDowell has not presented sufficient evidence to create a genuine factual dispute as to whether Wal-Mart had constructive notice of the water on which she fell.

McDowell relies on several of our decisions in an attempt to avoid this result. She first cites *Bagley*, 492 F.3d 328, a slip-and-fall case in which we reversed the district court's grant of summary judgment on the issue of constructive notice. But *Bagley* involved unique facts. There, the plaintiff slipped on what appeared to be "meat blood" that may have leaked from a shopping cart. *Bagley*, 492 F.3d at 330. There were no other customers on the aisle when the plaintiff slipped. *Id.* at 329. But when a fireman came to assist the plaintiff after she fell, he too slipped in the liquid; he later testified that the "meat blood" extended down the aisle and into the adjoining aisle. *Id.* at 329–30. We concluded that the size of the spill, the likelihood that the liquid came from a package of meat in a shopping cart, and the fact that no other customer was on the aisle when the plaintiff fell warranted a "reasonable inference" that the liquid had been on the floor for "some period of time" before

the accident. *Id.* at 331. Here, no evidence suggests that the spill was large or that it came from the cart of a shopper who had had sufficient time to exit the aisle. Indeed, at least two other customers were on the aisle when McDowell fell. *Bagley* is thus distinguishable.[3]

Instead, McDowell's evidence is closer to that in our non-precedential but persuasive case of *Adams*, 559 F. App'x 383. In *Adams*, the plaintiff slipped and fell on spilled lotion in a Dollar General aisle. *Id.* at 384. The plaintiff presented evidence that a Dollar General employee was in the vicinity of the spilled lotion along with security camera footage of the plaintiff walking to the aisle where she fell. *Id.* at 385–86. But the plaintiff "failed to present any evidence of how or why the lotion was spilled, much less any showing that [the nearby employee] or any other Dollar General employee were exercising less than reasonable care in not discovering it." *Id.* at 386. We affirmed the district court's grant of summary judgment. *Id.*[4]

McDowell has presented no positive evidence of how long the water at issue was on the floor before she fell. Instead, she asks us to infer from a *lack* of evidence that the spill was there for a sufficient period of time to create a factual dispute on constructive notice. But "[b]ecause it is the claimant's burden to prove the existence of the condition for some period of time, the absence of evidence cannot support the claimant's cause of action. Rather, the absence of evidence is fatal to the claimant's cause of action." *Oster v. Winn-Dixie La., Inc.*, 881 So. 2d 1257, 1261 (La. Ct. App. 2004).

---

[3] Our unpublished decision in *Courville v. Target Corp. of Minnesota*, 232 F. App'x 389 (5th Cir. 2007) (per curiam) also does not support a different outcome. In that case, the defendant's manager admitted that its employees "should have cleaned [the spill] up; they should have seen it." *Id.* at 392. No such evidence was presented here.

[4] McDowell asserts that *Adams* is distinguishable because in that case, the plaintiff relied solely on the employee's proximity to infer constructive notice. But, as here, the video evidence in *Adams* did not show the aisle in question.

No. 19-30768

AFFIRMED.