940 So.2d 89 (2006)
Debora MELTON o/b/o Cody Melton, Plaintiffs-Appellants
v.
Michael SMITH, Lisa Smith, and Hollywood Gateway, Defendants-Appellees.
No. 41,456-CA.
Court of Appeal of Louisiana, Second Circuit.
September 20, 2006.
*90 Flournoy & Doggett by George A. Flournoy, Alexandria, for Appellants.
Mayer, Smith & Roberts, L.L.P. by Kim Purdy Thomas, Shreveport, Tara Johnston, for Appellees.
Before BROWN, CARAWAY and MOORE, JJ.
CARAWAY, J.
In this slip and fall case, the plaintiff was unsuccessful in convincing the trial court that the puddle of water on the merchant's floor resulted from a leaky roof on a rainy day. The trial court then found that the plaintiff failed to meet her burden of proof under La. R.S. 9:2800.6 in showing that the merchant had constructive notice *91 of a spill. Finding no manifest error in the trial court's ruling, we affirm.

Facts
In February 2004, Debora Melton and her son, Cody, patronized defendants' video rental store in Jonesboro.[1] As Cody walked down the center aisle toward the back of the store, he slipped and fell in a small puddle of water, injuring his right knee.
On August 30, 2004, Melton sued Michael and Lisa Smith, the owners of Hollywood Gateway Video, the store in which Cody fell. The petition alleged the following:
On or about February 23, 2004, Cody Melton was a customer in Hollywood Gateway in Winn Parish, Louisiana, when he slipped and fell on a foreign substance on the floor due to a leaking sprinkler in the ceiling.
The petition contained no allegations whatsoever suggesting precipitation as either a direct or collateral source which could have contributed to any hazardous conditions inside the store. The Smiths answered the petition, denying liability.
Despite the petition's focus on a faulty ceiling sprinkler as the source of the water on the floor, at trial the plaintiff's case centered on the testimony of the Smiths' daughter, Nicole, who reported that the roof of the building leaked when it rained. Photos showed some rust discoloration of the metal framing suspending the ceiling panels. Nevertheless, those photos were taken after a storm damaged the building's roof in the summer of 2004, causing water damage throughout the store. Evidence from a meteorologist revealed that significant rain occurred in Jonesboro on February 22 and February 23, 2004. The date of the accident, however, was the subject of much dispute since no clear written documentation of the occurrence exists.
At trial, Mike and Lisa Smith each stated they were behind the counter in the front of the store when Cody fell. Lisa testified that she heard a woman ask, "are you okay?" She finished helping a customer and walked down the center aisle to the place where Cody fell. She denied seeing any water on the floor but admitted that when she saw Melton looking up at the ceiling, she looked up too. Melton did not testify that she informed the Smiths of any water source coming from the ceiling. Lisa denied that it had been raining prior to the accident.
Mike testified that he saw "drops" of water the size of a "grapefruit" puddled together on the floor. The trial court's ultimate ruling recited Melton's description of the puddle as the size of a dinner plate. Mike got the mop and bucket from the storeroom to clean up the spill. Cody was holding his right knee, and testified he felt water on his pants.
The Smiths testified that the store was cleaned routinely each night. They had no systematic procedure for inspecting the store during business hours. However, the store was relatively small, 1800 square feet, and the Smiths and their employees continuously traversed the center aisle. The Smiths, who had never been sued for a similar accident, had no accident reporting procedure.
About a month after the accident, Cody's family doctor treated him for complaints of right knee pain and swelling. She referred Cody to a specialist who diagnosed Cody as having Osgood Schlatter's disease. This disorder is described as osteochondritis of the tibial tubercle, occurring between ages 10 and 15 (more commonly *92 in boys), and caused by trauma from excessive traction around the knee-cap tendons. Cody's treatment consisted of prescription analgesics for pain relief, physical therapy, application of ice packs, and refraining from gym class participation for the remainder of the school year.
In its written reasons for judgment, the trial court made the following observations and conclusion:
How did the water get on the floor? How long was the water on the floor? Was it on the floor as a result of a leaking sprinkler, leaking roof, or was the rusty spot on the ceiling attributable to water leaking from the air conditioning vent located in close proximity? The inconsistency of the testimony of the plaintiffs and the consistent testimonial evidence of the defendants which include the store owners and the store personnel, establishes that the preponderance of the evidence is in favor of the defendant.
The court indicated that it was not convinced that the accident occurred on February 22, during a rain event. The court cited La. R.S. 9:2800.6 as the basis for its dismissal of plaintiff's claims. Going further, the opinion also indicated that Cody's condition with his knee was insufficiently linked to the accident. From this ruling, plaintiff appeals.

Discussion
In this fact-intensive case, the appellate standard of review is the manifest error/clearly wrong standard. When findings of fact are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact's findings. Only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in that which is said. Rosell v. ESCO, 549 So.2d 840 (La.1989); Crawford v. Ryan's Family Steak Houses, Inc., 31,911 (La.App.2d Cir.5/5/99), 741 So.2d 96; Tanner v. Brookshire Grocery Co., 29,276 (La.App.2d Cir.4/2/97), 691 So.2d 871.
In Birdsong v. Hirsch Memorial Coliseum, 39,101 (La.App.2d Cir.12/15/04), 889 So.2d 1232, this court reviewed the distinction between a slip and fall claim governed by the special merchant statute, La. R.S. 9:2800.6, and a claim involving a defective condition of the building. The patron in Birdsong slipped and fell on a wet surface while attending an ice skating event. In that case, the disputed evidence revealed two possible sources of the hazardous condition which gave rise to the plaintiff's slip and fall, either dampness on the floor due to condensate located in proximity to the ice rink or spillage of a foreign substance by other patrons. The contrasting sources of liability were described as either "in the premises," i.e., the wet floor from a defective condition of the building, or "on the premises," i.e., a spill from another patron or other person. The same issues were present in this case with the trial court's ruling resting upon the application of the merchant's statute.
The imposition of tort liability on a merchant for a patron's injuries resulting from an accident is governed by La. R.S. 9:2800.6.[2] "In the absence of proof that the *93 hazardous spill was caused by the defendant's own actions, the duty to keep the premises in a safe condition must be shown to have been breached by some proof of an inadequate inspection procedure . . . the burden of producing such evidence is now clearly back on the plaintiff in the storekeeper/merchant context. . . ." Birdsong v. Hirsch Memorial Coliseum, supra, citing Holden v. Louisiana State Univ. Medical Ctr. Shreveport, 29,268 (La.App.2d Cir.2/28/97), 690 So.2d 958, writ denied, 97-797 (La.5/1/97), 693 So.2d 730.
In White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081, the concept of constructive notice set forth in the merchant's statute is addressed. Whether the condition exists for a sufficient length of time for a merchant's discovery is necessarily a question of fact, but a claimant who simply shows that the condition exists, without the additional showing that it existed for some time before the fall does not carry the burden of proving constructive notice required by the statute. Id. at 1084. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden. Id. at 1084, 1085. In Crawford v. Ryan's Family Steak Houses, Inc., supra, this court concluded that the applicable rules of evidence allow for proof of this statutory temporal element by both direct and circumstantial evidence.
The Smiths' custody of the store premises resulted from a lease. From this status, responsibility for the defective condition of the building's alleged leaky roof may result in liability under Civil Code Article 2317.1 or Article 2315. Pamplin v. Bossier Parish Community College, 38,533 (La.App.2d Cir., 7/14/04), 878 So.2d 889, writ denied, 04-2310 (La.1/14/05), 889 So.2d 266. The notice and knowledge component of Article 2317.1,[3] which *94 changed the former strict liability standard for custodians to that of negligence, is the key. "This notice or knowledge of the defect now creates a negligence duty to protect guests on the leased premises from known defects which is uniformly applicable to both lessor and lessee alike." Id. at 894.
The plaintiff's case struggled greatly to identify the accident date. Since plaintiff was unable to show that the sprinkler was defectively leaking, proof of a rainy day and a leaky roof became essential for assertion of a claim under Article 2317.1 or Article 2315. The plaintiff's own reports of the accident to doctors and in the petition listed dates other than February 22. Based upon Melton's recollection, the accident occurred during the day on a weekend when Cody was not in school. The plaintiff's evidence only identified two days when it rainedSunday the 22nd and Monday the 23rd.
In the presentation of plaintiff's case, Nicole Smith was called on cross-examination. Nicole acknowledged that in her discovery deposition she stated that the roof of the store leaked with heavy rain and that this leak problem could have been occurring for "a year or two" prior to her deposition. She was deposed in February 2005, one year after the accident and over seven months since the storm damaged the building in the summer of 2004. In the defense questioning of Nicole, she retracted the length of time estimated earlier in discovery and instead linked the leaky condition of the roof to the summer storm of 2004.
The Smiths' evidence also disputed that it was raining at the time of the accident. Lisa testified that it was dry outside that day. Most significantly, while evidence from both sides indicates that Melton rented a video (or videos) on the date of the accident and that Cody was given a free video rental after his fall, the store records showed Melton's last video rentals on February 20, and no activity entered on her account on February 22. The last time Lisa could have rendered service to Melton was on February 14, the weekend before the time of the reported rain.[4]
Finally, in reaching its conclusion that the plaintiff did not prove the date of the accident or that it was raining, the court noted the lack of evidence from the building's landlord regarding reports of leaks and records of roof repairs. The court also emphasized that the petition presented plaintiff's initial claim as due to a leaking sprinkler without any mention of rain that day or rainwater either from customers or leaks as possible causes of the accident. Also, Melton never testified that she reported water from the leaking roof (coming from a sprinkler or otherwise) to the Smiths at the time of the accident.
From this evidence, we conclude that the trial court's finding of the absence of proof of a rain event was based upon its witness credibility determinations and overall weaknesses in the plaintiff's case. Since we find no manifest error, the plaintiff's claim that a defective condition of the merchant's building caused the accident could be rejected by the trial court.
When plaintiff's claim is considered under the merchant's statute, we find that the evidence supports the view that the *95 Smiths used reasonable care in monitoring the center aisle of their small store where Cody fell. By frequently traversing the aisle, they were in a position to keep that aisle in a reasonably safe condition and guard against the possibility of spills on the floor caused by patrons. Lisa testified that another customer was just leaving the store when the accident occurred. Therefore, it was plaintiff's burden to prove that the water spill which caused the accident had "existed for such a period of time" that it should have been discovered by the Smiths. There is little, if any, direct or circumstantial evidence supporting a finding that constructive notice existed in this case. Accordingly, the trial court's conclusion that liability was not proven under the standards of La. R.S. 9:2800.6 is also not clearly wrong or manifestly erroneous.
In conclusion, the plaintiff's claim centered upon allegations that the roof leaked during rain storms and that such an event caused a leak of water onto the merchant's floor. The trial court found that scenario implausible because neither the date of the accident nor a defective condition of the roof was proven. Plaintiff has not established this finding as manifestly erroneous. In the absence of a known, defective condition in the premises, proof under the merchant statute for responsibility for a slip and fall from a spill on the premises was required by plaintiff. The statute protects the merchant from liability for spills caused by other patrons. The trial court correctly dismissed plaintiff's claim since the statutory burden of proof was not met. Costs of appeal are assessed to plaintiff.
AFFIRMED.
NOTES
[1] Although the petition quoted below alleged that the store was in Winn Parish, it was actually in Jonesboro, which is in Jackson Parish.
[2] La. R.S. 9:2800.6 provides:

A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.
[3] Civil Code Art. 2317.1 provides in part as follows:

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
[4] The entries on Melton's account for February 20 and February 19 reveal that she received service from two employees who the Smiths testified were not present on the date of the accident.