999 So.2d 166 (2008)
Davlyn HEATH and Henry Heath, Sr., Plaintiffs-Appellants
v.
ITT HARTFORD INSURANCE COMPANY, Brookshire Grocery Company, and Mike McCoy, Defendants-Appellees.
No. 43,756-CA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 2008.
*167 The Downs Law Firm by E. Ross Downs, Jr., Ramsey Lee Ogg, Monroe, for Appellants.
Hudson, Potts & Bernstein by Donald H. Zeigler, III, Gordon L. James, Monroe, for Appellees.
Before BROWN, WILLIAMS, and LOLLEY, JJ.
BROWN, Chief Judge.
Plaintiffs, Davlyn and Henry Heath, Sr., have appealed from the trial court's judgment dismissing their claims against defendants, ITT Hartford Insurance Co., Brookshire Grocery Company, and Mike McCoy, for damages arising out of a slip and fall accident at the Bastrop Super 1 Foods Store. For the reasons set forth below, we affirm the judgment of the trial court.

Facts and Procedural Background
On June 12, 2004, while shopping at the Bastrop Super 1 Foods Store, plaintiff, Davlyn Heath, slipped on a banana peel. Mrs. Heath did not fall to the floor, but was able to catch herself by grabbing the buggy she was pushing. According to Mrs. Heath, her leg went under the buggy and her body twisted. Mrs. Heath reported the incident to two store employees who were stocking a display at the end of the aisle. All who observed the banana peel upon which Mrs. Heath slipped described its color as solid yellow. Mrs. Heath sought medical treatment for her injuries and on May 27, 2005, she and her husband, Henry Heath, Sr., filed the instant action against defendants, ITT Hartford Insurance Company (insurer of the Super 1 Foods Store), Brookshire Grocery Company (owner and operator of the Super 1 Foods Store), and Mike McCoy (store manager), seeking damages arising from this incident.
Trial was held on October 11-12, 2007, and March 27, 2008, and judgment in favor of defendants dismissing plaintiffs' claims was rendered and signed on April 8, 2008. Specifically, the trial court found that plaintiffs failed to establish that Super 1 had actual or constructive notice of the banana peel and therefore were unable to establish liability on the part of defendants. Plaintiffs have appealed from this adverse judgment.

Discussion
Louisiana Revised Statute 9:2800.6 provides in pertinent part:
(A) A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of *168 any hazardous conditions which reasonably might give rise to damage.
(B) In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
(C) Definitions:
(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition....
In addition to all of the other elements of their cause of action, plaintiffs have the burden of proving each of the enumerated elements of Section (B) of La. R.S. 9:2800.6. White v. Wal-Mart Stores, Inc., 97-0393 (La.09/09/97), 699 So.2d 1081. As the supreme court in White, supra, observed, though there is some overlapping, the remaining elements to be proved by plaintiffs are duty, breach, cause in fact, risk and harm within the scope of duty, and actual damages. White, 699 So.2d at 1084 (f.n. 3) citing Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318. Failure to prove any of these required elements will prove fatal to plaintiffs' claim. Id.; Oster v. Winn-Dixie Louisiana, Inc., 04-117 (La.App. 5th Cir.08/31/04), 881 So.2d 1257, writ denied, 04-2414 (La.12/17/04), 888 So.2d 867.
It is undisputed that the banana peel in the aisle was a hazardous condition which presented an unreasonable risk of harm to store patrons such as Mrs. Heath, and that the risk of harm, injury caused by slipping on the peel, was reasonably foreseeable. La. R.S. 9:2800.6(B)(1). The pivotal issue in this appeal by plaintiffs is whether the trial court was manifestly erroneous in finding that plaintiffs failed to establish that Super 1 Foods had actual or constructive notice of the condition which caused the damage prior to the occurrence. La. R.S. 9:2800.6(B)(2).
In its oral reasons for judgment, the trial court observed that there was no evidence of actual notice of the hazardous condition presented by the banana peel on the floor. Although plaintiffs have argued that the evidence supports the conclusion that Super 1 had actual notice of the banana peel, the record contains no evidence that store employees had seen or were aware of the banana peel on the floor prior to Mrs. Heath's accident.
In White, 699 So.2d at 1084-85, the Louisiana Supreme Court recognized that the constructive notice requirement found in the merchant liability statute, La. R.S. 9:2800.6, involves a temporal element:

*169 Though there is no bright line time period, a claimant must show that "the condition existed for such a period of time..." Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden.
Whether the condition exists for a sufficient length of time for a merchant's discovery is necessarily a fact question. Melton v. Smith, 41,456 (La.App. 2d Cir.09/20/06), 940 So.2d 89. Plaintiffs are not required to prove by eyewitness testimony that the hazardous condition existed for a certain number of minutes prior to the accident. Instead, proof of the statutory temporal element can be by both direct and circumstantial evidence. Id.; Bassett v. Toys "R" Us Delaware, Inc., 36,434 (La.App. 2d Cir.12/30/02), 836 So.2d 465, writ denied, 03-0560 (La.04/25/03), 842 So.2d 408; Davenport v. Albertson's, Inc., 00-00685 (La.App. 3d Cir.12/06/00), 774 So.2d 340, writ denied, 01-0073 (La.03/23/01), 788 So.2d 427.
The trial court noted that all of the evidence on the issue of constructive notice came in the form of circumstantial evidence, and found that plaintiffs' evidence was insufficient to establish constructive knowledge on the part of the merchant. As noted above, Louisiana La. R.S. 9:2800.6 does not allow for the inference of constructive notice absent some showing of the temporal element. See Howard v. Family Dollar Store, 40,282 (La.App. 2d Cir.10/26/05), 914 So.2d 118. We will therefore review the evidence presented at trial to determine whether the trial court's factual conclusion regarding constructive notice is manifestly erroneous or clearly wrong.
Plaintiff, Davlyn Heath, testified that on June 12, 2004, as she went into Super 1, she got a buggy, turned right to the produce section, then rounded the corner near the lunch meat/freezer side. As she made her way down the aisle, her buggy ran through a banana peel and she apparently stepped in it. She skidded, but managed to catch herself on the buggy. Earl Smith, a customer, came over to help her. Mrs. Heath saw two store employees, Doles and McVay, stocking down on the end, and she asked them for a manager. Mrs. Heath told Roy Shaw, a store manager, about her incident and stated that someone needed to take care of the banana peel. Shaw told one of the boys to pick up the peel. Mrs. Heath described the peel as yellow with skid marks (which were probably the ones she made). According to Mrs. Heath, based on its overall appearance the banana peel didn't look like it had been on the floor long.
Earl Smith testified that as he was getting a cup of coffee, he turned around and saw Mrs. Heath going down-her foot went underneath her basket and she twisted. Smith went to check on Mrs. Heath, and she told him she had slipped on a banana peel. Smith didn't know where the peel came from or how long it had been on the floor. According to Smith, the peel looked as if it hadn't been on the floor for very long. Smith opined that he didn't know whether an employee could have even seen Mrs. Heath prior to her accident *170 (apparently because of their location around the corner).
Christopher Haye, Asset Protection Manager for Brookshire's, stated that store policy regarding prevention of slip and fall accidents was that all employees were instructed to constantly inspect the floors as they work in or about the store. Employees were instructed that any visible hazard was to be immediately removed or corrected. Brian Doles, who was working at Super 1 as a utility clerk on the date of Mrs. Heath's accident, testified that he was told to keep the floor free of any foreign substance or debris and to be constantly on the lookout for such a condition. Doles noted that there was no set procedure for inspecting the floors because employees were always to be on the lookout for hazards.
Brian Doles testified that on the date of Mrs. Heath's incident, June 12, 2004, he and Donald McVay were stocking at the intersection of the meat market and the center aisle. Doles estimated that they began this task approximately an hour before the accident. Doles stated that he was called to aisle seven by a customer, and he walked down the market aisle back to where he was stocking. He did not have a clear view down the meat market aisle toward the deli because he was moving around. According to Doles, he last walked through the deli area 15 minutes prior to Mrs. Heath's accident. At that time, there was no banana peel on the floor. According to Doles, had there been a peel at that time, he would have seen it as he walked through the area. On and off during the 15 minutes before Mrs. Heath's incident, he could see down the meat market aisle. However, the aisle between where they were stocking and where the incident occurred had some dump bins and displays in the middle of it and his view would have been obstructed.
Doles testified that Mrs. Heath came up to where he and McVay were stocking and told him that she had slipped on a banana peel, but didn't fall because she caught herself on her buggy. Mrs. Heath told him that she was hurt and he went to get his manager, Roy Shaw. Doles saw the peel after Mrs. Heath's accident; Doles described the peel as solid yellow.
Donald McVay testified that part of his job as utility clerk was to keep the store clean. Specifically, he was told to constantly look at the floors for debris while he worked. McVay stated that he and Doles were stocking near the center aisle on the date of Mrs. Heath's accident. This required McVay to walk to the back room for merchandise from time to time. While walking from the front of the store to the back approximately five minutes before the incident, he looked down the aisle where the peel was and didn't see a peel on the floor. McVay noted that he could see down the aisle when walking to the back room, but not from where the two clerks were stocking because the center aisle displays would have obstructed the view. When Mrs. Heath came to report the accident to him and Doles, he went to the spot where she slipped and didn't see the peel even then because her buggy was right there. McVay described the peel as yellow with no tread or step marks, and no brown or bruised spots.
Roy Shaw was the highest ranking store manager on duty when Mrs. Heath slipped on the banana peel on June 12, 2004. Shaw reiterated the store policy that all employees are to constantly look at and inspect the floors for any foreign substances. Shaw testified that he was in the area 15 minutes before Mrs. Heath's accident and did not see a banana peel on the floor. Shaw was adamant that there had been a peel on the floor at that time, he would have seen it. Upon learning of Mrs. *171 Heath's accident, Shaw's primary concern was assisting the customer. Contrary to store policy, photos of the banana peel on the floor were not taken, but this was because he was focused on taking care of Mrs. Heath and cleaning the scene to prevent further accidents. Shaw acknowledged that the accident was not preserved on videotape. It was his impression that the video camera that would have captured the incident wasn't working that day. Shaw described the banana as "smooshy" with black stripe marks.
Kevin McKee, assistant manager, filled out the accident report for the incident on June 12, 2004. McKee clarified that the accident was not captured on any of the surveillance tapes. He reviewed the tape from the camera nearest the site of the accident and the incident was not on tape. Because the tape did not contain any evidence of the incident, he was not instructed to save it, and he filed it back on the shelf with the other videotapes to be reused. McKee stated that the store doesn't preserve tapes unless an incident is captured on video.
McKee testified that approximately 40 minutes before Mrs. Heath's accident, he was last in that area. At that time, he did not see anything on the floor. Had there been a peel on the floor at that time, McKee stated that he would have seen it. After the incident, as he approached the scene, McKee noted that the banana peel had been removed to prevent further accidents. He took photographs of the scene at that time.
There was no direct evidence as to how the banana peel got onto the floor or how long the peel had been on the floor. In fact, the circumstantial evidence presented suggests that the banana peel had not been on the floor for very long. All of the witnesses described the peel as yellow with no brown spots. Earl Smith opined that the peel looked as if it had been stepped on by Mrs. Heath, and that he could tell by the peel's appearance that it hadn't been on the floor for very long. Several store employees had walked down the aisle or were in the area 40 minutes (McKee), 15 minutes (Shaw, Doles), and 5 minutes (McVay) before the incident. They all testified that they did not see the banana peel on the floor. We cannot say that the trial court was clearly wrong or manifestly erroneous in its conclusion that plaintiffs failed to establish that the banana peel was on the floor for such a period of time that it would have been discovered if the merchant had exercised reasonable care.[1]

Conclusion
For the reasons set forth above, the trial court's judgment in favor of defendants, ITT Hartford Insurance Company, Brookshire Grocery Company, and Mike McCoy, is AFFIRMED. Costs are assessed to plaintiffs-appellants, Davlyn Heath and Henry Heath, Sr.
NOTES
[1] We do not reach plaintiffs' remaining assignments of error based upon our resolution of this issue.