Judgment rendered August 11, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,032-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CRYSTAL BELL                                   Plaintiff-Appellant
O/B/O D'ARBRI COX

versus

BIG STAR OF TALLULAH, INC.                     Defendants-Appellees
AND AMTRUST NORTH
AMERICA, INC.

* * * * *

Appealed from the
Sixth Judicial District Court for the
Parish of Madison, Louisiana
Trial Court No. 2018-183

Honorable Michael Lancaster, Judge

* * * * *

S. DOUGLAS BUSARI & ASSOC., LLC        Counsel for Appellant
By: S. Douglas Busari

BLUE WILLIAMS, L.L.P.                   Counsel for Appellees
By: Robert I. Baudouin
    Richard E. Gruner, Jr.

* * * * *

Before MOORE, GARRETT, and STEPHENS, JJ.

**MOORE, C.J.**

The plaintiff, a woman seven months pregnant, slipped and fell on a foreign substance on the floor of a grocery store. Three months later, she gave birth to a child severely disabled due to prenatal brain hemorrhaging. She sued the grocer for her damages and those suffered by the infant, whose disabilities she alleged arose from injuries sustained in the slip and fall. Following discovery, the grocer and its insurer moved for summary judgment on grounds that the plaintiff could not meet her burden of proof under La. R.S. 2800.6, the Merchant Liability statute. After a hearing, the trial court agreed and granted summary judgment in favor of the defendants dismissing the plaintiff's claims.

This appeal followed. We affirm.

## FACTS

Late on a Sunday afternoon, October 27, 2017, Crystal Bell slipped and fell while walking through the chip and water aisle of the Big Star of Tallulah, Inc., a/k/a Doug's Market, a grocery store in Tallulah, Louisiana. Ms. Bell was not pushing a grocery cart when the accident occurred; rather, she was carrying her grocery items in her arms as she headed to the front of the store.

Ms. Bell stated that she was walking into the aisle when she suddenly did a split on the floor landing on the bottom of her stomach. Her grocery items scattered everywhere. She said she "blanked out," but when she came to she saw some white stuff on the floor. She did not recall whether there was a lot or a little of this substance on the floor, but she said that one pant leg was wet from it. She was wearing shoes that she described as "flats."

Ms. Bell reported the fall to the assistant manager, Boyd Wyatt, whom she said she had seen on a nearby aisle before the accident. Wyatt got some paper towels and went with Ms. Bell to the location of the accident. He described the foreign substance as a clear, whitish-looking substance about the size of a nickel. He speculated that it was mayonnaise or salad dressing possibly spilled from a sandwich by someone eating while walking through the store. He cleaned it up with a paper towel. Ms. Bell said that Wyatt had some difficulty cleaning black scuff marks made through the substance, which she said were possibly from a grocery cart; however, this testimony was not corroborated by Wyatt's deposition testimony. Wyatt said that he wrote down Ms. Bell's account of the accident on a pad and placed it on the store manager's desk. The record contains a copy of the note, which reads:

> "10-27-17  5:44 PM
> "Crystal Bell slipped and fell in front of the water display.
> Complained of an injured elbow and abdomen pain."

The note also has Ms. Bell's address and telephone number and is signed, "Mr. Wyatt, asst. manager."

Stuart Allen King, the store manager, had already left for the day about 3:00 p.m. when the accident occurred. He did not learn of the incident until the following morning. He said he immediately contacted the insurance carrier.

The store has a video surveillance system consisting of 31 cameras focused on areas throughout the store. Wyatt did not customarily review video footage; he said that King was the person to do so. He asked King about the results of the video surveillance of Ms. Bell's accident, and King told him that the video did not show anything.

2

After she gave Wyatt her account of the accident, Ms. Bell finished purchasing her items and returned to the car in the parking lot where her friend Cassie Stewart was waiting. Ms. Stewart said that Ms. Bell walked out of the store dragging one leg and her pants were wet. Ms. Stewart drove Ms. Bell to the Madison Parish Hospital emergency room, in Tallulah. The medical record of her visit indicates that Ms. Bell arrived at the hospital at 5:58 PM. She complained of pain in her left elbow, left leg, pelvic and lower back resulting from a fall. The report notes that Ms. Bell was not in acute distress and was calm and cooperative; her due date was 1/20/2018; and the medical staff monitored the baby's heartbeat as well as Ms. Bell's. Ms. Bell was taking medication, Methyldopa, for her blood pressure three times daily. She was given Tylenol for pain and released with instructions to follow up with her treating physician within 48 hours.

According to Ms. Bell, other than pelvic pain, the first indication that something might be wrong regarding her pregnancy was on January 4, 2018, when she had a scheduled visit with her OB-GYN who she said was going to schedule a C-section for her on January 10. Instead, he told her to go to Glenwood Medical Center, in West Monroe, to be admitted for observation. She attributed his concerns to her elevated blood pressure, which she attributed to the pain. After her admission at Glenwood, the staff began prepping her for a C-section. Ms. Bell gave birth to a baby girl, D'arbri Cox, on January 5, 2018.

Approximately one hour after her birth, the baby was transferred to St. Francis Medical Center, in Monroe, and placed in the NICU due to respiratory depression. A CT scan showed massive hemorrhagic events in the child's brain, injury to her sagittal sinus with bleeding in the

intraparenchymal region in the proximity of the sagittal sinus on the right side; and, a subgaleal hematoma in the same region. There was also evidence of epidural, subdural, subgaleal hematomas and massive frontal bilateral hematomas. According to Ms. Bell, the child spent most of the next five months in the hospital undergoing two surgeries before she was allowed to go home. She said D'arbri currently lives with her and receives therapy three times per week.

On September 7, 2018, 11 months after the accident, Ms. Bell filed suit against Big Star of Tallulah, Inc. (a/k/a Doug's IGA Grocery Store), and its insurer, later identified as Republic Fire and Casualty Insurance Company (hereinafter, collectively referred to as "Big Star"). The petition sought damages for pain and suffering, mental anguish, permanent injuries and disability, economic losses, and loss of enjoyment of life.

Big Star denied the allegations and raised several affirmative defenses including Ms. Bell's exclusive fault, comparative fault, failure to mitigate damages, and third-party fault. Following discovery, Big Star moved for summary judgment on grounds that Ms. Bell could not meet her burden of proof pursuant to La. R.S. 2800.6.

At the hearing on the motion, Big Star argued that the nickel-sized dollop of mayonnaise did not create an unreasonable risk of harm, nor was it a foreseeable risk; the grocery store did not create the hazard, nor did it have constructive notice of the presence of a foreign substance on the floor; and the store had in place adequate safety precautions and procedures that were followed on the day of the accident.

The trial court agreed with Big Star in all respects and granted summary judgment. This appeal followed.

4

## DISCUSSION

On appeal, Ms. Bell raises two assignments of error. First, she alleges the trial court erred by granting summary judgment when she presented positive evidence of the existence of the condition for a period of time prior to her slip and fall. Second, she contends that the trial court erred by not addressing the issue of spoliation of evidence.

Appellate courts review motions for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Matlock v. Brookshire Grocery Co.*, 53,069 (La. App. 2 Cir. 11/20/19), 285 So. 3d 76, *writ denied*, 20-00259 (La. 4/27/20), 295 So. 3d 389; *Bank of Am., N.A. v. Green*, 52,044 (La. App. 2 Cir. 5/23/18), 249 So. 3d 219. Summary judgment is favored by law and provides a vehicle by which the just, speedy, and inexpensive determination of an action may be achieved. La. C.C.P. art. 966(A)(2). We review the record and all reasonable inferences to be drawn from it in the light most favorable to the nonmoving party. *Matlock, supra.*

A motion for summary judgment shall be granted if, after adequate discovery, the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

La. C.C.P. art. 966(D)(1) provides:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to

5

establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

In this case, the defendants assert that Ms. Bell does not have, nor can she produce, factual support to establish the essential elements of her claim under the Merchant Liability statute, La. R.S. 9:2800.6, which provides, in part:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
>> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>>
>> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>>
>> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
>
> C. Definitions: (1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

In view of these statutory requirements, plaintiffs who slip and fall in merchants' premises bear a heavy burden of proof. Failure by a plaintiff to

6

prove any of the three required elements in La. R.S. 9:2800.6(B) is fatal to a plaintiff's case. *Moy v. Brookshire Grocery Co.*, 48,177 (La. App. 2 Cir. 6/26/13), 117 So. 3d 611; *Gregory v. Brookshire Grocery Co.*, 45,070 (La. App. 2 Cir. 4/21/10), 35 So. 3d 458.

Because this motion for a summary judgment was filed by the defendant merchant, who does not have the burden of proof at trial, it was required merely to point out the absence of factual support for one or more of the essential elements required by La. R.S. 9:2800(B). Hence, to defeat the motion, the plaintiff's burden is to produce factual support sufficient to establish the existence of a genuine issue of material fact with regard to each of the three elements required by La. R.S. 9:2800.6(B), or otherwise show that the defendant is not entitled to a summary judgment as a matter of law. La. C.C.P. art. 966(D)(1).

The first element of R.S. 9:2800.6(B) requires the plaintiff to produce factual support sufficient to show a genuine issue of material fact that there was a condition on the premises floor that presented an unreasonable risk of harm and the risk of harm was reasonably foreseeable. Big Star does not contest that a small, nickel-sized, white substance was on the floor of the water aisle. Nor does it contest, for purposes of the motion for summary judgment, that Ms. Bell slipped and fell on the aisle floor.[1] Rather, it argues that because the dollop was small and difficult to see, it did not create an unreasonable or foreseeable risk of harm.

An "unreasonable risk of harm" is present, so as to support the merchant's statutory liability for a customer's slip and fall, if the dangerous

---

[1] Big Star did not dispute that the slip and fall occurred, thereby arguing that this concession renders the claim of spoliation of the video surveillance irrelevant.

7

condition would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. *Willig v. Pinnacle Ent. Inc.*, 15-1998 (La. App. 1 Cir. 9/16/16), 202 So. 3d 1169. In determining whether a condition presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. *Bufkin v. Felipe's La., LLC*, 14-0288 (La. 10/15/14), 171 So. 3d 851. The determination of the unreasonableness of a risk predominantly encompasses an abundance of factual findings, which differ greatly from case to case. *Johnson v. Brookshire Grocery Co.*, 32,770 (La. App. 2 Cir. 3/1/00), 754 So. 2d 346, *writ denied*, 00-0938 (La. 5/26/00), 762 So. 2d 1107; *Lawrence v. City of Shreveport*, 41,825 (La. App. 2 Cir. 1/31/07), 948 So. 2d 1179, *writ denied*, 07-0441 (La. 4/20/07), 954 So. 2d 166. Whether a condition poses an unreasonable risk of harm that is foreseeable is a finding of fact. *Reed v. Wal-Mart Stores Inc.*, 97-1174 (La. 3/4/98), 708 So. 2d 362.

"In a slip and fall case, a hazard is established when the fall results from a foreign substance on a floor or an unreasonably slippery condition." *Burnett v. M & E Food Mart, Inc. No. 2*, 2000-350, p. 3 (La. App. 3 Cir. 11/15/00), 772 So. 2d 393, 396, *writ denied*, 00-3425 (La. 2/16/01), 786 So. 2d 101. "A hazardous condition on a merchant's premises is one that creates an unreasonable risk of harm to customers under the circumstances; in the context of slip-and-fall cases, a hazard is shown to exist when the fall results from an unreasonably slippery condition." *Pena v. Delchamps, Inc.*, 2006-0364, p. 4 (La. App. 1 Cir. 3/28/07), 960 So. 2d 988, 991, *writ denied*, 07-0875 (La. 6/22/07), 959 So. 2d 498

8

In his deposition, Wyatt, the assistant manager, described the substance shown to him by Ms. Bell: "I didn't know what it was, but there was no slip and slide in it. There was no slip in it. * * * It was a clear, whiteish-looking substance." The accident occurred in front of the water display, and there were no broken mayonnaise jars on the aisle. Wyatt speculated that it might have been something that fell from a sandwich that someone was eating while walking through the aisle. He said it looked like mayonnaise or salad dressing or something of that nature.

Ms. Bell said some of the substance was on one of her pant legs; she did not remember how much of it was on the floor. Her friend, Cassie Stewart, stated in an affidavit that Ms. Bell's pant legs were wet when she came out of the store. Although Wyatt said that the substance was not slippery and he cleaned it up with one paper towel, Ms. Bell stated that she slipped and fell because of it, and one of her pant legs was wet from it.

Because the dollop was small and difficult to see, Big Star argues the risk of a slip and fall injury was minimal when compared to the prohibitive cost of prevention which, it argues, would require multiple employees whose sole job is walking through the store looking out for substances on the floors.

On the other hand, we note that the process of shopping in a grocery market draws a customer's attention to store shelves rather than the floor. The risk of a slip and fall is greater when there is a foreign substance on the floor. For this reason, our law requires merchants to employ reasonable procedures to reduce the risk of slip and fall accidents due to a foreign substance on the floor.

9

In *Ratcliff v. Winn-Dixie Stores, Inc.*, 2018 WL 1532980 (E.D. La. 3/29/18), the court found that a reasonable jury could find that the harm posed by a puddle of water near the freezer section was neither obvious nor apparent because a prudent shopper's view of the condition would likely be obstructed if he or she were pushing a grocery cart. It also concluded that the repair cost is low, since the puddle could have been cleaned in a matter of seconds at a minimal cost to Winn-Dixie. Accordingly, the court found that the plaintiff had met the statutory requirement to show that the condition posed an unreasonable risk of harm that was foreseeable.

The determination of whether the foreign substance created an unreasonable risk of injury that was foreseeable is a question of fact to be determined by the fact finder. A dollop of what Big Star refers to as mayonnaise, like water, would not be easily seen by patrons, especially on a light floor. Although Wyatt said the substance had no slip in it, Ms. Bell said she slipped on it.

Viewing the evidence in a light most favorable to the nonmoving party, we find that Ms. Bell presented factual support sufficient to establish a genuine issue of material fact whether the slippery foreign substance on the floor posed an unreasonable risk of harm that was foreseeable.

The second element of La. R.S. 9:2800(B) requires the plaintiff to prove the merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence. Ms. Bell presented no evidence that Big Star created or caused the hazardous condition on its floor. Therefore, the Ms. Bell is required to prove that Big Star had constructive notice of it.

10

As defined in R.S. 9:2800.6(C)(1), constructive notice requires proof of a temporal element – "such a period of time." The statute does not allow for the inference of constructive notice absent some showing of this temporal element. *White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 9/9/97), 699 So. 2d 1081; *Moy v. Brookshire Grocery Co.*, *supra*. Proof of the statutory temporal element can be by both direct and circumstantial evidence. *Heath v. ITT Hartford Ins. Co.*, 43,756 (La. App. 2 Cir. 12/3/08), 999 So. 2d 166. Mere speculation or suggestion is not enough to meet the stringent burden imposed on a plaintiff by R.S. 9:2800.6. *Chunn v. Brookshire Grocery Co.*, 44,505 (La. App. 2 Cir. 8/19/09), 18 So. 3d 179.

Big Star supported its motion for summary judgment with the affidavits of Wyatt and King. Both attested to the store's longstanding policy of conducting walk-through inspections of the floors every 30 minutes to locate and remove any possible hazards. Wyatt stated that he had walked the chip and water aisle where Ms. Bell fell approximately 10 minutes, and not more than 30 minutes, before the accident occurred; he did not recall any black track marks or scuffs that were made through the substance, and saw no skid through it. He said that it took him only about one minute to clean it from the floor.

Ms. Bell argued that the substance had been on the floor for an extended period of time because she stated in her deposition that there was a track mark through it that would be consistent with a cart having been pushed through it. Ms. Bell was not pushing a grocery cart when she fell. She argues that the court should infer proof of the temporal element based on her recollection that Wyatt had difficulty cleaning the scuff marks from the floor; this, she contends, implies that the substance had been there a long

11

time, the store had constructive notice of it, and failed to exercise reasonable care in discovering it.

The record contains no photographs showing the substance on the floor, no video surveillance recording of the accident, or before and after the accident, and no video evidence of walk-through inspections of the floor prior to the accident or any other time period.

When Wyatt was questioned about the walk-throughs, he said that either the manager or one of the assistant managers made the rounds through the store whenever they got "caught-up" tending to matters involving the cashiers at the front of the store, e.g., getting change, approving checks, etc., but within 30 minutes. This cycle would be repeated throughout the day.

We conclude that the statement by Ms. Bell regarding the alleged cart marks does not establish a genuine issue of material fact as to the temporal element required by La. R.S. 9:2800.2. The fact that a cart track may or may not have been made through the substance prior to the slip and fall does not indicate when the track was made or that it was made at such a time that it would have been discovered through reasonable care. The cart track could have occurred just minutes before Ms. Bell slipped on it, or hours. There was simply no evidence as to how long the substance was on the floor before Ms. Bell slipped on it, which is required to establish constructive notice of the hazardous condition. *Grantham v. El Dorado Resort Casino Shreveport*, 49,474 (La. App. 2 Cir. 11/19/14), 152 So. 3d 1028, *writ denied*, 14-2654 (La. 3/6/15), 160 So. 3d 1290. A reasonable jury could not conclude that the temporal element has been met based solely on this evidence. That would be mere speculation.

12

The final element requires the plaintiff to show that the merchant did not exercise reasonable care. Ms. Bell produced no factual support that Big Star did not follow its longstanding procedure of conducting walk-throughs at least every half hour while it was open for business. A showing of the presence of a foreign substance on the floor alone is not *ipso facto* sufficient to establish a genuine issue of material fact as to whether Big Star exercised reasonable care. Ms. Bell presented no factual support that the procedure was not followed or that 30-minute walk-throughs would be unreasonable under the facts and circumstances of this case.

We therefore conclude that the trial court did not err by granting the motion for summary judgment. This assignment is without merit.

By her second assignment, Ms. Bell contends that the trial court committed reversible error by not addressing her claim of spoliation of evidence, namely, the video surveillance recordings of the accident.

As a general rule, when a judgment is silent with respect to any demand which was an issue in the case under the pleadings, such silence constitutes an absolute rejection of such demand. *Sun Finance Co. v. Jackson*, 525 So. 2d 532 (La. 1988); *Hammond v. Hammond*, 51,316 (La. App. 2 Cir. 4/5/17), 217 So. 3d 1198; *Schaeffer v. Schaeffer*, 40,562 (La. App. 2 Cir. 10/26/05), 914 So. 2d 631. When the district court implicitly rejects a demand by silence, the standard of review is whether the court abused its discretion. *Hammond v. Hammond, supra*; *Soileau v. Soileau*, 2003-1282 (La. App. 3 Cir. 4/7/04), 870 So. 2d 584.

After Big Star moved for summary judgment, on March 13, 2020, Ms. Bell filed a second amending petition, on October 16, 2020, alleging that the defendants engaged in evidence spoliation to thwart and/or impede her cause

13

of action. In support, she cites the alleged inconsistent deposition testimony in which the store owner, Douglas Curtis, said that Ms. Bell was seen on the video, but the video did not capture the slip and fall, whereas the manager, Stuart King, denied seeing her on a video surveillance tape at all. Next, she contends counsel did not receive Big Star's discovery response that the video was "not available" until one year and three months after she made the discovery request. She suggested that counsel acquiesced to the long delay because he was led to believe Big Star wanted to settle the case; instead, it hired new counsel who set up mediation, and then cancelled it. Finally, Ms. Bell questions whether Big Star's claim that it allowed the original video to be recorded over because it showed no slip and fall is believable. She maintains that if the video actually showed that no slip and fall occurred, Big Star would have kept it to show that it was not liable.

Big Star responds that there is no spoliation issue regarding the video recordings of the slip and fall, since it does not contest that Ms. Bell slipped and fell in the store.

Our review of the record shows that Ms. Bell's first discovery request, seeking tapes of video surveillance from one hour before to one hour after the fall, was served on May 16, 2019. The second request for production of surveillance tapes in the record is not signed or dated; it requests video surveillance from the time the store opened on October 27, 2017, until three hours after the slip and fall. Big Star's response was "not available."

The depositions show that Wyatt had only secondhand knowledge of the video system and did not review any video recordings of the incident. He stated he asked the manager, King, what the tapes showed about the accident, and King responded, "I didn't see anything." King's statement

14

was slightly ambiguous regarding whether he saw Ms. Bell in the store at all, but he clearly said he did not find any video of the incident. He noted that the video system has some blind spots in the store. Curtis, the store owner, said the video only showed Ms. Bell walking near the end of the water aisle, and did not show her slip and fall. The only other video of Ms. Bell was her at the front of the store by the cash registers.

Both these witnesses said that the video recordings were not preserved since they did not show the slip and fall.

In *Reynolds v. Bordelon*, 14-2362 (La. 6/30/15), 172 So. 3d 589, the Louisiana Supreme Court held no cause of action exists for negligent spoliation. "[R]egardless of any alleged source of the duty, whether general or specific," public policy in Louisiana "precludes the existence of a duty to preserve evidence." *Id.* It did recognize "[a]lternative avenues of recourse ... within Louisiana's evidentiary, discovery, and contractual laws." *Id.* at 592. Specifically, the court stated:

> Discovery sanctions and criminal sanctions are available for first-party spoliators. Additionally, Louisiana recognizes the adverse presumption against litigants who had access to evidence and did not make it available or destroyed it. Regarding negligent spoliation by third parties, the plaintiff who anticipates litigation can enter into a contract to preserve the evidence and, in the event of a breach, avail himself of those contractual remedies. Court orders for preservation are also obtainable.

*Id.* at 600.

In this case, the record does not show that the store or its insurer were aware that Ms. Bell sustained any serious injury or that the prenatal child suffered injuries from the alleged fall until this suit was filed, nearly 11 months after the accident. No formal request for the surveillance tapes was filed until May 16, 2019, nearly 1½ years after the slip and fall.

15

As noted, Ms. Bell suggested that counsel allowed this much time to pass because he was lured into believing a settlement, and then mediation, would occur. She now argues that this was all part of a nefarious plan by the defendants to thwart or impede her cause of action.

We think it is important, however, that even while Big Star was slow to respond to the request for the surveillance videos, Ms. Bell did not file a motion to compel under La. C.C.P. art. 1469. Once counsel became suspicious that Big Star either negligently or intentionally destroyed the videos to evade liability, the issue of spoliation of the evidence could have been raised in the trial court through procedural means, such as a rule for discovery sanctions under La. C.C.P. art. 1471, or a motion *in limine* seeking sanctions on the party responsible for the destruction or inaccessibility of the evidence. One possible sanction would be the adverse inference. *See Carter v. Hi Nabor Super Market, LLC*, 2013-0529 (La. App. 1 Cir. 12/30/14), 168 So. 3d 698, *writ denied*, 15-0190 (La. 4/17/15), 168 So. 3d 399; s*ee also, Grantham, supra.*

However, the evidence of negligent or intentional spoliation in this case is completely lacking. King's testimony simply indicates that he apparently could not find any video evidence of Ms. Bell on the aisle where the slip and fall occurred; he attributed that to either his own inability to locate the video recording or to blind spots in the video camera. He was ambiguous as to whether he saw Ms. Bell elsewhere in the store, which obviously would have come from a different video camera. It would have required him to view video made of different parts of the store from different cameras.

Mr. Curtis, the owner, apparently reviewed videos from several cameras. He said he did not see any video of Ms. Bell slipping and falling on the water aisle, but he did see one of her apparently exiting that aisle, and a separate one of her in the cash register area.

While these witnesses did not preserve the sparse video recording of Ms. Bell in the store, there is no evidence that Big Star intentionally sought to destroy the video by allowing store cameras to record over the tape approximately one month after the slip and fall. King reported the accident to Republic the day after it occurred, telling them that he did not have any video recording of the slip and fall, and therefore, he did not give them any video surveillance. Curtis stated that he was not involved with the claim made to the insurer; however, he had some video of Ms. Bell in the front of the store, but nothing more.

The trial court obviously found Big Star's story regarding the video to be plausible given Ms. Bell's presentation of nothing more than innuendo, but no evidence of negligent or intentional wrongdoing. The trial court's implicit rejection of the issue of spoliation in rendering judgment was not an abuse of discretion.

This assignment is without merit.

## CONCLUSION

For the foregoing reasons, the summary judgment granted to Big Star is affirmed. Costs of this appeal are assessed to Ms. Bell.

**AFFIRMED.**