MOORE, J.
 

 h Dianne Milton appeals a judgment that dismissed her tort claim arising from a trip and fall at the Hurry Back convenience store in Monroe. Finding no manifest error, we affirm.
 

 Factual Background
 

 On September 24, 2005, the day that Hurricane Rita passed over Monroe, Ms. Milton went to the Hurry Back, located on Louisville Avenue near its intersection with DeSiard Street, to make a purchase. A 4 x 6, commercial grade, rubber-backed mat was laid on either side of the entrance. Because of the wet conditions, a 3 x 10 mat had been placed just past the smaller
 
 *1093
 
 mat, roughly perpendicular to the door, instead of in its usual place in front of the cashier stations to the right. Ms. Milton, wearing a pair of synthetic slides and white socks, entered the store with no problem and stood in line for a few moments. After she paid for her purchase, she turned to her right and started to move toward the door. Somehow, her right foot caught the edge of the 3 x 10 mat and she fell to the floor, landing heavily on her right knee and elbow, and striking the side of her head against a wire display rack. She quickly got to her feet and left the store.
 

 The incident was captured on the store’s surveillance cameras. The video is of good quality, showing no bumps or wrinkles in the mat.
 

 The store manager, Ms. Garcia, testified that the store leased its mats from the laundry service, Cintas, which changed out mats once a week. On each delivery day, Ms. Garcia would inspect the mats and refuse any that were wrinkled or would not lie flat. She also testified that on the day of Hurricane Rita, she directed her employees to move the 3 x 10 mat to the 12central traffic portion of the store because of the excess water being tracked in by customers. The video confirms that the store was very busy that day. Data from National Weather Service showed that 3.49 inches of rain fell and winds of 43 mph were recorded at Monroe Regional Airport.
 

 Procedural History and Trial Testimony
 

 Ms. Milton filed this suit in November 2005 against Hurry Back’s owner, E & M Oil Co., and its insurer, State Farm. The original petition alleged that the carpet was buckled where she tripped on it; however, in a pretrial statement, after viewing the video, she revised her claim to allege that her “foot slipped under the floor mat.”
 

 Trial was held over three days in December 2008, April and November 2009. In addition to her healthcare providers and her own testimony, Ms. Milton called State Farm’s insurance adjuster, Larry Mason, who confirmed that he investigated the incident and concluded that E & M did nothing wrong.
 

 Ms. Milton’s lead witness was Robert L. “Bobby” Urban, the owner of Bob Moss Carpet One in Monroe. She tendered him as an “expert in floor covering in retail or commercial establishments that are commonly used in Northeast Louisiana that are suitable to be used in a retail store.” After voir dire, the district court accepted Mr. Urban “with respect to the construction and type of mats and the types of mats and the intended uses for a particular type of mat, the range of product available and the intended uses it’s designed for or can be used for in ordinary circumstances.” However, the court refused to accept him as an expert in “placement of mats | sand their use in risk prevention,” as these are matters of lay testimony under La. C.E. art. 701.
 

 Mr. Urban testified that in his survey of over 100 similar stores in the area, he normally found mats placed on either side of the entrance, “in the walk aisles” and by the beverage areas, but he had never seen one in the checkout area except on a temporary basis. He stated that placing a mat so close to the checkout counter was hazardous because most people, after making their purchase, pivot and drag their feet toward the door; E & M objected to this point, however, as beyond Mr. Urban’s expertise, and the objection was sustained. He concluded that if the mat was necessary, it should have been placed 3 or 4 feet
 
 *1094
 
 away from the counter or flush with it.
 
 [1]
 

 On cross-examination, Mr. Urban agreed that during a major rain event, he would place more mats in areas where water was being tracked in, and that on the video this particular mat stayed in place despite the heavy foot traffic that day.
 

 After taking the case under advisement, the court rendered a judgment that simply rejected Ms. Milton’s claims. It provided no reasons for judgment, and neither side requested any. This appeal followed.
 

 The Parties’ Positions
 

 Ms. Milton raises two assignments of error. Her first assignment urges that the court erred in failing to find that E & M’s negligence caused her injury. She does not cite the Claims Against Merchants statute, La. R.S. |49:2800.6, but she cites several cases that utilized it to impose a duty of reasonable care, such as
 
 Hardman v. Kroger Co.,
 
 34,250 (La.App. 2 Cir. 12/6/00), 775 So.2d 1093. At oral argument, she asserted that the applicable law is La. C.C. art. 2317, which imposes liability for damage caused by “the things which we have in our custody.” She acknowledges in brief that the store manager rejected mats with “bad” wrinkles or “severe” tears, but infers that mats with
 
 moderate
 
 wrinkles and tears were routinely used and potentially hazardous. She also cites Mr. Urban’s view that the mat was “light weight, possibly worn, and improperly placed,” and that water usually does not accumulate in front of checkout counters. She adds that E & M called no expert to contradict Mr. Urban, and concludes that the defense tried to smear her as a “claims-minded” person who exaggerated her physical complaints. By reply brief, she argues that “mats aren’t supposed to do this.”
 

 Her second assignment suggests general damages of $35,000 and special damages of $6,199.04, as itemized in her exhibits.
 

 E & M responds that the standard of review is manifest error and that the court’s implicit findings are not plainly wrong. It shows that under the Claims Against Merchants statute, liability attaches only if the condition presented an unreasonable risk of harm to the claimant and the risk of harm was reasonably foreseeable. La. R.S. 9:2800.6 B(l). It argues that in rainy weather, no merchant can keep the floor perfectly dry, as this court stated in
 
 Hardman v. Kroger Co., supra,
 
 reversing the judgment for a store patron in a slip-and-fall case. It further argues that store employees actually complied with Mr. Urban’s expert view by placing the 3 x 10 mat in an area where Lpeople were likely to track rainwater; it would have been negligent
 
 not
 
 to place the mat there. Still further, E & M argues that the video plainly showed no wrinkles or tears in the mat, and that Mr. Urban admitted on cross-examination that using a lightweight mat is not beneath the standard of care. It concludes that the district court committed no manifest error, and does not address quantum.
 

 Discussion
 

 The imposition of tort liability against a merchant for a patron’s injuries resulting from an accident on the merchant’s premises is governed by the Claims Against Merchants statute, La. R.S. 9:2800.6.
 
 Davis v. Wal-Mart Stores,
 
 2000-0445 (La.11/28/00), 774 So.2d 84;
 
 Melton v. Smith,
 
 41,456 (La.App. 2 Cir. 9/20/06), 940
 
 *1095
 
 So.2d 89. The statute provides, in pertinent part:
 

 A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
 

 B. In a negligence claim brought against a merchant by a person legally on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
 

 (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
 

 (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, pri- or to the occurrence.
 

 (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
 

 [[Image here]]
 

 D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.
 

 It is undisputed that E & M created the condition which caused the damage, satisfying Subsection B(2), and on the instant facts the existence or absence of a uniform cleanup or safety procedure under Subsection B(3) is plainly inapplicable. The only issue is the unreasonable risk of harm under Subsection B(l).
 

 There is no fixed rule for determining whether a thing presents an unreasonable risk of harm. To assist the trier of fact, the supreme court has noted various factors for consideration: (1) the claims and interests of the parties, (2) the probability of the risk occurring, (3) the gravity of the consequences, (4) the burden of adequate precautions, (5) individual and societal rights and obligations, and (6) the social utility involved.
 
 Lasyone v. Kansas City Southern R. Co.,
 
 2000-2628 (La.4/3/01), 786 So.2d 682, and citations therein. The unreasonable risk of harm criterion is not a simple rule of law to be applied mechanically, but rather a concept embodying the judicial process of reaching an intelligent and responsible decision regarding which risks are encompassed within codal obligations, from the standpoint of justice and social utility.
 
 Id.; Mason v. Monroe City School Bd.,
 
 43,595 (La.App. 2 Cir. 9/17/08), 996 So.3d 377, 240 Ed. Law Rep. 469. Above all, the mere fact that an accident occurred because of a vice or defect does not elevate it to an unreasonably dangerous vice or defect.
 
 Lasyone v. Kansas City Southern, supra; Durmon v. Billings,
 
 38,514 (La.App. 2 Cir. 5/12/04), 873 So.2d 872. The vice or defect must be of 17such a nature as to constitute a dangerous condition that would be reasonably expected to cause injury to a prudent person using ordinary care under the circumstances.
 
 Lasyone v. Kansas City Southern, supra; Durmon v. Billings, supra.
 

 The district court’s findings under the Claims Against Merchants statute are subject to manifest error review.
 
 Chunn v. Brookshire Grocery Co.,
 
 44,505 (La.App. 2 Cir. 8/19/09), 18 So.3d 179, and citations therein;
 
 Melton v. Smith, supra.
 

 
 *1096
 
 As noted, Mr. Urban testified that this grade of mat is in common use in the area. Moreover, the surveillance video, which is of impressively high resolution, clearly shows that the 3x10 mat was free of wrinkles, buckles or bumps, was lying flat on the floor, and was not fraying or unraveling. Despite the heavy foot traffic, nobody else stumbled or tripped while walking over it. In short, the probability that this particular risk might occur, a trip and fall on this mat, appears minimal at best.
 

 Mr. Urban also testified, and common sense would confirm, that the main point is to lay the mat in an area where moisture is likely to accumulate, as near a self-serve beverage area. Ms. Milton argues strenuously that no rain was falling when she came to the Hurry Back, the 60-foot canopy in front of the store prevented rainwater from blowing in, and the 4x6 mats on either side of the entrance were sufficient; hence, the 8 x 10 mat did not need to be where it was. However, this was the day that Hurricane Rita passed over Monroe, with significant wind and rain measured at the airport. E & M’s manager anticipated this and moved the mat to the area where patrons would walk in with wet feet and dripping Isdothes. In light of the risk posed by a wet floor in a high-traffic area, the decision to move the mat addressed and offset the greater risk of slipping on a wet floor, and was an adequate precaution to protect both the store and its patrons.
 

 Ms. Milton finally argues that “mats aren’t supposed to do this,” and we are somewhat at a loss to explain precisely how this accident occurred, except to theorize that part of her slide must have dragged across the floor and kicked up the lip of the mat. However, the mere fact that an accident occurred does not elevate the condition of the thing to an unreasonable vice or defect.
 
 Lasyone v. Kansas City Southern, supra; Durmon v. Billings, supra.
 
 This record fails to show that there was anything inherently and unreasonably dangerous about this mat. Moreover, it affirmatively shows that the decision to move it on the day of the accident was rational, outweighed the risk of taking no action, and did not create an unreasonable risk of harm. The district court’s implicit findings are not plainly wrong, and this assignment of error lacks merit.
 

 In light of this conclusion, we pretermit any discussion of Ms. Milton’s second assignment of error concerning quantum.
 

 Conclusion
 

 For the reasons expressed, the judgment dismissing Ms. Milton’s claim is affirmed at her cost.
 

 AFFIRMED.
 

 [1]
 

 . Mr. Urban also criticized E & M for selecting light-to-medium weight mats, but during a recess he went downstairs and discovered that the mats by the entrance to the Ouachita Parish Courthouse are the same grade as those used at Hurry Back. He then conceded that this grade of mat was indeed acceptable.