GARRETT, J.
Lin this slip and fall ease, the plaintiff, Mona Moy, appeals from a trial court judgment in favor of the defendant, Brook-shire Grocery Company. We affirm the trial court judgment.
FACTS
On May 19, 2010, at about 1:00 p.m., the plaintiff was shopping at a Super One Foods store in West Monroe. The store had 11 checkout lanes which were laid out side by side and perpendicular to the wall where the store exit was located. Counter 11 is the checkout, counter closest to the store exit. At that time, customers bagged their own groceries after the items were scanned by the cashier at the checkout counter.
The plaintiff, a certified nursing assistant employed by a sitting service, was helping an autistic client and his mother with their grocery shopping. After checking out at counter 10, the plaintiff walked around the end of that counter and toward the area at the end of counter 11. Her reasons for this were unclear. She testified that she was either looking for bags for her groceries or walking over to a nearby soft drink display. When she was about halfway past the end of counter 11, the plaintiff fell down, landing on her knees.
According to the plaintiffs trial testimony, she slipped in a puddle of water which was about the size of either a “dinner plate” or a “basketball.” She testified that a store employee was the first person to reach her and that this woman stated that the plaintiff had slipped in water. The plaintiff testified that she sat on a bench near the store exit and watched two store employees — Dianne Johnston and Barbara Plumley — wipe the floor with |2paper towels. The assistant manager, Christopher Baker, approached the plaintiff. He filled *613 out an incident report which stated that the customer reported slipping on water at the end of the register and that the substance on the floor had “[already [been] wiped up.”
After driving her client and his mother home, the plaintiff sought medical attention at the emergency room at St. Francis Medical Center in Monroe. She complained of pain in her left knee and lower back. The next day, she retained counsel who made an appointment for her with Dr. Patterson. Dr. Patterson referred her to an orthopedic surgeon, Dr. Ferrer. On September 1, 2010, Dr. Ferrer performed arthroscopic surgery on the plaintiffs left knee.
The plaintiff received weekly worker’s compensation benefits for 21 weeks. She was released by Dr. Ferrer to return to work without restrictions in October 2010. Her prior permanent assignment with her autistic client was no longer available. She testified that she continued to experience problems with her knee and that the worker’s compensation insurer refused to allow her to see a physician to whom Dr. Ferrer wished to refer her. She eventually quit her job.
In the meantime, the instant suit was filed in West Monroe City Court in July 2010 and transferred to district court in November 2011. The plaintiff alleged that she was injured after slipping in a puddle of water in the defendant’s store. She asserted that the defendant was negligent in creating an unreasonable risk of harm, failing to provide a reasonable checkout counter, failing to make a reasonable effort to keep the premises 13free of hazards, and failing to exercise reasonable care. She further contended that the defendant knew or should have known of the unreasonably dangerous condition on its premises. The plaintiff sought damages for pain and suffering, mental anguish, physical injuries, medical expenses and loss of wages.
The worker’s compensation insurer, LUBA Casualty Insurance Company, intervened in the lawsuit to claim reimbursement for the worker’s compensation benefits paid to and on behalf of the plaintiff.
A bench trial was held on July 16, 2012. In addition to her own testimony, the plaintiff presented the testimony of three of the defendant’s employees — Ms. Johnston, a nonfood manager who was the first person to reach the plaintiff after she fell; Ms. Plumley, the cashier working the register at counter 11, the spot where the plaintiff fell; and Mr. Baker, the assistant manager who filled out the incident report. None of these employees observed the plaintiffs fall. Ms. Johnston and Ms. Plumley both testified that they wiped the floor with paper towels but found no liquid in the area where the plaintiff fell. Mr. Baker testified that he utilized the information he obtained from the plaintiff to fill out the accident report. He further testified that he did not discuss the plaintiffs fall with the two female employees when it happened. As a result, he did not learn of the absence of water on the floor until almost a month later when the three of them gave recorded statements about the incident to the defendant’s home office.
|4Among the items of evidence introduced at trial were the accident report, a store surveillance video which showed the plaintiffs fall from two camera angles, and photos or screen captures from the video. The video also included the time periods immediately preceding and following the incident. No water is visible on the floor in the video. In the minutes leading up to the plaintiffs fall, numerous people — both store employees and customers — traverse the area without any difficulty or mishap and without noticing any hazardous substance on the floor.
*614 On September 5, 2012, the trial court rendered very thorough written reasons for judgment in which it found that the plaintiff had failed to carry her burden of proof under La. R.S. 9:2800.6(B), which governs a merchant’s liability for such accidents. The court observed, in pertinent part:
There is no doubt that Plaintiff fell, but the reason for her fall cannot readily be ascertained from the video. No water or any other type of spill can be seen, and no one or nothing is seen creating a spill. What is readily apparent is that a number of individuals, both employees and customers, traversed the area of Plaintiffs fall during the time span of the video without incident. No one appears to slip or have difficulty walking, and no one looks down as if to see something on the floor. The last employee to pass this location was about five minutes before Plaintiffs fall.
No evidence was introduced to establish that Defendant created the hazardous condition or had actual notice of it. Thus, Plaintiff must prove constructive notice as defined in La. R.S. 9:2800.6(0(1).
A good deal of the testimony at trial as well as Plaintiffs post-trial brief is focused on the issue of whether or not there was water on the floor. However, as the jurisprudence noted above makes abundantly clear, it is not sufficient for Plaintiff to show there was water on the Ififloor. She must also show the water had been on the floor for some time prior to her fall in order to prove constructive notice.
The video provides no positive visual evidence of water on the floor and merely shows the passage of time. Numerous other people can be seen traversing the area without slipping or avoiding the area. To reach the conclusion Plaintiff urges the court to reach would require the court to make a series of assumptions and impermissible inferences unsupported by the evidence. Such speculation falls short of the factual support necessary to meet Plaintiffs burden of proof.
The court ultimately concluded:
Even if the court assumes there was water on the floor, a fact not necessarily proved by Plaintiff, the court finds Plaintiff has failed to present positive evidence that the water was on the floor for any length of time prior to her fall, i.e., she has failed to make a showing of the temporal element.
Thus, the court determined that the plaintiff did not prove constructive notice on the part of the store, an essential element of her claim. Judgment was signed October 9, 2012, denying the demands of the plaintiff and the intervenor with prejudice at the plaintiffs cost.
The plaintiff appealed.
LAW
The imposition of tort liability on a merchant for a patron’s injuries resulting from an accident on the merchant’s premises is governed by the Claims Against Merchants statute, La. R.S. 9:2800.6. Milton v. E & M Oil Co., 45,528 (La.App.2d Cir.9/22/10), 47 So.3d 1091. In relevant part, that statute provides:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
*615 |fiB. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) “Constructive notice” means the claimant has proven that the condition existed for such a period of time that it would have been discovered, if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
A plaintiff who sustains an injury iecause of a fall resulting from a condition ti or on a merchant’s premises must prove he requisite statutory elements to estabIsh a valid merchant liability claim, and ne failure to prove any of the required lements will prove fatal to a plaintiffs |aim. Chunn v. Brookshire Grocery Co., 4505 (La.App.2d Cir.8/19/09), 18 So.3d 179; Williams v. State Farm Ins. Co., 47,348 (La.App.2d Cir.7/25/12), 103 So.3d 433.
The definition of “constructive notice” includes a temporal element — “such a period of time....” The statute does not allow for the inference of constructive notice absent some showing of this temporal element. White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081. Proof of the statutory temporal element can be by both direct and circumstantial evidence. Heath v. ITT Hartford Ins. Co., 43,756 (La.App.2d Cir.12/3/08), 999 So.2d 166. Mere speculation or suggestion is not enough to meet the stringent burden imposed upon a plaintiff by the statute governing negligence claims against merchants. Chunn v. Brookshire Grocery Co., supra.
A trial court’s findings regarding liability for damages caused by a slip and fall accident at the defendant’s place of business are factual determinations that will not be disturbed absent manifest error or unless clearly wrong. Jones v. Brookshire Grocery Co., 37,117 (La.App.2d Cir.5/14/03), 847 So.2d 43. Whether the condition exists for a sufficient length of time for a merchant’s discovery is necessarily a fact question. Heath v. ITT Hartford Ins. Co., supra.
Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993); Williams v. State Farm Ins. Co., supra. Further, when findings are based on determinations regarding credibility of witnesses, the manifest error-elearly wrong standard demands great deference to the trier of fact’s findings. Williams v. State Farm Ins. Co., supra.
*616 Louisiana’s three-tiered court system allocates the fact finding function to the trial courts. Because of that allocation of function (as well as the trial court’s normal procedure of evaluating live witnesses), great | ¡Reference is accorded to the trial court’s factual findings, both express and implicit, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appellate review of the trial court’s judgment. Virgil v. American Guarantee & Liab. Ins. Co., 507 So.2d 825 (La.1987).
EVIDENCE
Ms. Johnston, the nonfood manager, had been employed by the defendant for nine years at the time of trial. She testified that she heard the plaintiffs fall and that she hurried over to the plaintiff who had already gotten up. According to Ms. Johnston’s testimony, the plaintiff told her she must have slipped in some water and that she thought it came from the shopping cart of a female customer who had just left. However, Ms. Johnston testified that she did not observe any water or a water trail on the floor.
Ms. Plumley, the cashier, had been employed by the defendant for 20 years. She testified that Ms. Johnston said the plaintiff slipped and that either the plaintiff or Ms. Johnston said she slipped on water. When asked if Ms. Johnston told her what the plaintiff slipped on, Ms. Plumley testified that “[tjhey said water” and that “they” was either Ms. Johnston or the plaintiff. When pressed by plaintiffs counsel, she essentially indicated that since she did not recall having a direct conversation with the plaintiff, it must have been Ms. Johnston. On the other hand, Ms. Johnston testified categorically that she did not tell Ms. Plumley that there was water on the | ¡floor or to get towels. She testified that it was the plaintiff who said she slipped in water.
Ms. Plumley stated that she automatically grabbed some paper towels when Ms. Johnston said something about the plaintiff slipping. Ms. Plumley and Ms. Johnston testified that they wiped the floor thoroughly with paper towels for several minutes but were unable to find any water on the floor. Ms. Plumley testified that she did not recall Mr. Baker asking her between the time of the incident and their subsequent recorded statements for the home office if there was water on the floor. Likewise, Ms. Johnston testified that Mr. Baker did not talk to her about the incident the day it happened.
Mr. Baker, the assistant manager, had been employed by the defendant for 16 years. He testified that he spoke to the plaintiff after her fall was reported to him and that she recounted slipping in some water that had already been wiped up. He said that he used this information in filling out the accident report. He also testified as to the duties of the checkout personnel, which included keeping the area around their checkout stands clean and free from spills and restocking candy and other items by the checkout counters. Mr. Baker stated that he did not discuss the incident with Ms. Johnston or Ms. Plumley before he submitted the accident report to the defendant’s home office. As a result, he was unaware that they had not found any water on the floor until a month later when they were asked to give recorded statements about the incident.
| inThe plaintiff testified two store employees helped her up and one said that she had slipped in water. The employees got paper towels and began to wipe the floor. She went and sat on a bench. While she was seated there, Mr. Baker approached her. According to her testimony, she told him that she fell in some *617 water and that his employees were getting the water up. The plaintiff described a puddle of water the size of a dinner plate or a basketball. She could not say where it came from or how long it had been on the floor. She testified that the employees’ testimony that they never found any water on the floor was not true.
Review of the video shows that, in the minutes before the, plaintiff fell, several people — including a woman carrying a baby — traversed the area of the fall without incident. Then two different shopping carts were parked at the end of counter 11, one after the other, in quick succession. The last cart departed approximately 22 seconds before the plaintiffs fall. After falling, the plaintiff got to her feet without assistance. Ms. Johnston approached the plaintiff first. At virtually the same time, Ms. Plumley grabbed paper towels and walked to the end of counter 11. The plaintiff walked over to the bench by the store exit while the' two female employees wiped at the floor for about two minutes. A man wearing a white shirt and dark pants approached the female employees and appeared to talk to them briefly; his identity is unknown but he appeared to be shorter and thinner than Mr. Baker. Ms. Plumley resumed checking out customers. Ms. Johnston appeared to check the floor around counter 11 before walking toward the pharmacy. The plaintiff got up from the bench and walked back |nto the end of counter 10, where she appeared to sit down on something. Mr. Baker approached her there and they walked back to the bench together. They sat on the bench for almost six minutes before the plaintiff departed from the store. (During this interval, the unknown man seen previously returned to counter 11 briefly.) Mr. Baker walked away from the store exit, apparently heading in the direction of the store office. He then turned around, went back to counter 11, near the spot where Ms. Plumley was working at her register, and remained for about three minutes. During this time, he interacted with Ms. Plumley, a male customer and another store employee.
DISCUSSION
After hearing the witnesses’ testimony at trial and viewing the store surveillance video, the trial court found that there was no evidence introduced to establish that the defendant created a hazardous condition or had actual notice of such a condition. The trial court also found that the plaintiff failed to prove the mandatory temporal element to support a constructive notice claim. We find no manifest error in the trial court’s rulings on these issues.
At the outset, we note that the plaintiff argues that the trial court erred in not making a definitive ruling as to whether or not there was water on the store floor. Review of the trial court’s well-reasoned written reasons for judgment shows that the trial court referred to the presence of water on the | i2floor as “a fact not necessarily proved by Plaintiff.” This implicitly indicates that the trial court did not accept the testimony of the plaintiff, who emphatically insisted that there was a puddle of water the size of a basketball or a plate on the floor and that the defendant’s employees were lying. However, the trial court— recognizing that the plaintiff had clearly failed in proving the mandatory temporal element required by La. R.S. 9:2800.6— obviously determined that it was unnecessary to belabor the issue of the presence of water on the floor. We find no error in this decision by the trial court.
Additionally, the plaintiff argues that this court must find that the testimony of the defendant’s employees was impeached by their actions on the video and the manner in which the reporting/investigation *618 was handled. As to Ms. Plumley and Ms. Johnston, she asserts that they appear to be wiping up water and a water trail. Our review of the video does not contradict the testimony of these witnesses that they wiped a large area while unsuccessfully searching for water on the floor. As to the plaintiffs assertions that Mr. Baker talked to the female employees before he spoke to the plaintiff, the man who speaks to them at this point on the video does not appear to be the same man subsequently identified as Mr. Baker. While Mr. Baker does appear to go over to Ms. Plumley’s counter after speaking to the plaintiff, we cannot speculate or assume — as the plaintiff would have us do — what, if any, topic he discussed with her. We further note that the | ^plaintiff failed to confront these witnesses with the aforementioned portions of the tape during their testimony and did not question them in any detail as to these specific actions.
The video admitted into evidence shows the area where the plaintiff fell for a period of about 16 minutes before the fall and 18 minutes afterwards. As the trial court correctly noted, there is no liquid visible on the floor. However, given the distance and angle of the cameras and the poor quality of the video, we understand that a clear liquid might not be apparent on the video. Notably, though, no one is seen obviously spilling anything on the floor. Although the plaintiff claims that we should construe this as proof that water was already on the floor before the video began, this argument is belied by the ability of all of the other persons shown on the video to successfully traverse the area at the end of counter 11. Several people, both customers and store employees, walk directly over the spot where the plaintiff fell without misadventure. One customer is even carrying a small child in her arms and she negotiates the area without any difficulty. The time frame between the departure of the last cart from counter 11 and the plaintiffs fall was only 22 seconds. Under all of these circumstances, there is simply no evidence to establish any negligent conduct on the part of the defendant. We find no manifest error in the trial court’s rulings. We agree with the trial court’s ultimate conclusion that, even assuming arguendo there was some water on the floor, the plaintiff failed to prove the mandatory temporal element, i.e., that the water was on 114the floor for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiff/appellant, Mona Moy.
AFFIRMED.