JAMES F. McKAY III, Chief Judge.
| jThis is a personal injury suit arising out of a slip-and-fall. On March 24, 2014, the First City Court for the City of New Orleans rendered judgment in favor of the plaintifflappellee, Gregory Beggs (“Mr. Beggs”), and against the defendanVappel-lant, Jazz Casino' Company, LLC d/b/a Harrah’s New Orleans Casino (“Har-rah’s”), awarding Mr. Beggs a total of .$26,222.56 in damages [1]. Mr. Beggs was assessed with 50% comparative negligence. Thus, his award was reduced to $18,111.28, plus court costs and judicial interest.
For the reasons set forth below, we affirm the trial court’s findings of fault. However, because the amount awarded is in excess of the First City Court’s jurisdictional limit, we amend the judgment to award Mr. Beggs an initial $25,000.00 (the maximum amount allowed[2]), reduced to $12,500.00 plus court costs and judicial interest, due to his 50% comparative negligence.
[.FACTS AND PROCEDURAL HISTORY
Mr. Beggs filed a petition for damages alleging that he sustained personal injuries as a result of a slip-and-fall in a Harrah’s restroom. The petition alleges that on July 19, 2011, Mr. Beggs entered the men’s restroom nearest the blackjack table, where he slipped in a puddle of water on the floor; causing injuries to his back.
At trial, Mr. Beggs testified that on the night in question he and his friend Johnnie Todaro (“Ms. Todaro”) had a couple of drinks and appetizers in the Harrah’s VIP lounge before going to play blackjack. After an hour of play, Mr. Beggs used the restroom closest to the blackjack table (the “Smuggler’s Cove” restroom). .Upon returning to the table, Mr. Beggs commented to Ms. Todaro and the blackjack dealer that the restroom was a mess. Specifically, he stated that there was water all over the floor, no wet floor signs, and no attendant present. Mr. Beggs explained that the blackjack dealer shrugged his shoulders and gave no response. In her testimony, Ms. Todaro acknowledged that Mr. Beggs complained about the condition of the restroom when he returned to the table.
Approximately an hour and thirty minutes later (around 1:80 a.m.), Mr. Beggs used the Smuggler’s Cove restroom a second time, wherein he noted its condition was worse and still there was no attendant. He stated that he saw water scattered throughout 50% of the floor. Mr. Beggs testified that he walked in “paying attention so I wouldn’t slip because I had flip-flops on. I walked up and I Rwalked into the urinal. 1 got my right foot up and I slipped and I twisted my upper torso and grabbed the partition dividing the urinals. I broke my fall. I might have touched the floor, but I don’t remember, but I broke my fall with the partition.” Mr. Beggs described having immediate pain in his back. He did not recall seeing a wet floor sign. He explained that he was not thinking about the condition of the restroom, which he noted on his first visit. Rather, he chose that restroom because it was the closest and he “had to go,” explaining that he “had no choice.”
Upon leaving the restroom, Mr. Beggs stated that he approached a female Har-rah’s employee, telling her that he slipped *920 and fell in the bathroom, which he described to her as “a disaster.” Mr. Beggs went back to the blackjack table and resumed play. Ms. Todaro testified that she could see that Mr. Beggs’ bottom was wet. She also stated that he complained about pain in his back from the fall. Shortly thereafter, Harrah’s employees came to speak with him about the accident. Mr. Beggs did not know the names of any of the Harrah’s employees.
Mr. Beggs and Ms. Todaro were escorted by Harrah’s employees to an area of the casino known as the Masquerade. Once there, EMTs assisted Mr. Beggs, and an ambulance was called. EMT Johnny McBride testified that Mr. Beggs was in pain at the time. Mr. Beggs was taken by ambulance to Touro Hospital.
At Touro Hospital, x-rays were taken of Mr. Beggs’ back; he was given pain medication and released. Thereafter, Mr. Beggs treated with chiropractor Dr. Nicholas Digerolano for approximately seventy-six visits over seven months. Dr. Digero-lano testified that Mr. Beggs first visited on July 19, 2011, wherein he |4related the fall at Harrah’s. At that time, Mr. Beggs complained of neck pain radiating to the right arm, as well as mid and lower back pain radiating to the right leg. Mr. Beggs was also seen by medical doctors, Dr. Ash-fot Qureshi and Dr. Barrett Day, both employed by Dr. Digerolano. Mr. Beggs testified that the chiropractic treatment helped to relieve the pain.
Nathan Tyson (“Mr. Tyson”), a janitor with Harrah’s at the time of the incident, testified that he was inside the Smuggler’s Cove restroom maintenance closet when he heard Mr. Beggs fall. When he came out into the restroom, Mr. Tyson asked Mr. Beggs if he was okay.' He saw Mr. Beggs walk out limping.
Mr. Tyson’s shift that night started at 10:00 p.m. At that time, he noted that the floor of the restroom was kind of damp and there were no wet floor signs in place. He further stated that the Smuggler’s Cove restroom is “a mess.” Mr. Tyson explained: “I mean if I come on the shift and I clean the bathroom, it’s so busy that if I leave out and clean the area and come back, it don’t take that long for the floors to get like — maybe ten minutes for it to be messed up again. So the floors become completely wet with anything. It don’t take that long.” In her trial testimony, Ms. Todaro stated that the Smuggler’s Cove restrooms are referred to as the “ghetto bathrooms” because “they always have a lot of homeless people and they get pretty wrecked over there. We usually don’t like to go to those, but when you need to go you go to the closest one you can.”
Mr. Tyson was shown a photograph of the Smuggler’s Cove restroom, depicting a wooden wet floor sign in place. He explained that he did not put the | ¡¡sign there. Mr. Tyson further stated that the wooden sign “is not supposed to be used for the inside of the bathroom, you can’t see it.” He explained that the yellow signs are used inside the restroom and the wooden ones are used at the front entrance to the restroom.
In reference to the wooden sign depicted in the photograph, Mr. Tyson did not recall if the sign was there when he started his shift, but he did say that the sign is not visible because of the way it is faced away. Specifically, he stated that “if the sign is placed towards the stalls, [which are located past the urinals] a person that is coming in, you’re not going to see it unless its facing you and it’s yellow and it’s visible. This sign is not visible and it’s facing towards the stall. You need to walk past that sign.”
Derek Montgomery (“Mr. Montgomery”), a security officer for Harrah’s, testified that on the night in question, he was *921 responding to his dispatcher’s call regarding a slip-and-fall when he was approached by Mr. Beggs. After speaking with Mr. Beggs, Mr. Montgomery called for the on-duty EMT. Mr. Montgomery and another employee, Joseph Marino (“Mr. Marino”), waited with Mr. Beggs at the blackjack table until the EMT arrived. At that time, Mr. Montgomery investigated the Smuggler’s Cove restroom. He stated that there was nothing on the floor but some “droplets” of water and a wet floor sign in the second stall. Mr. Montgomery then returned to Mr. Beggs and stayed with him until he was taken away by ambulance. At that time, Mr. Montgomery and Mr. Marino went back to the restroom where he again noted the droplets of water on the floor and the Rwooden wet floor sign. Mr. Marino took photographs of the restroom, showing the wooden wet floor sign. After that investigation, Mr. Montgomery went back to his office to write an accident report. Mr. Montgomery explained that he did not notify someone to clean up the water until after the investigation was done.
Fallen Williams (“Mr. Williams”), a shift manager at Harrah’s responsible for staffing the restrooms, testified at trial. He stated that he does not staff an attendant in every restroom, but instructs the attendants to check the restrooms every fifteen minutes. Mr. Williams did not investigate Mr. Beggs’ accident.
After taking the matter under advisement, judgment was rendered on March 24, 2014, in favor of Mr. Beggs. In reasons for judgment, the trial court stated:
Had the employees at Harrah’s followed the policies and procedures and reported the water on the floor, the defect would have been discovered. Therefore, the Court finds that the defendant failed to exercise reasonable care. Based on the plaintiffs testimony, the incident report, and the defendant’s failure to exercise reasonable care, the Court finds that plaintiff met his burden of proof and sustained damages.
The trial court further attributed 50% comparative fault to Mr. Beggs. Harrah’s timely appeal followed.
ASSIGNMENTS OF ERROR
Harrah’s asserts that the trial court erred: 1) in finding that Harrah’s failed to exercise reasonable care; 2) in its failure to recognize that Harrah’s owed no duty to Mr. Beggs because the condition of which he complained was open and obvious; 3) alternatively, in failing to find Mr. Beggs greater than 50% at fault; and 4) in rendering judgment in favor of Mr. Beggs in the sum of $26,225.26, which amount exceeds the $25,000.00 jurisdictional limit of the First City Court.
IvSTANDARD OF REVIEW
To reverse a trial court’s factual determinations, an appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes the finding is clearly wrong. Stobart v. State Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact’s finding because only the fact finder can be aware of the variations in demeanor and tone of voice that bears so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989) (citations omitted).
“A trial court’s findings regarding liability for damages caused by a slip and fall accident at the defendant’s place of business are factual determinations that will not be disturbed absent manifest error or *922 unless clearly wrong.” Moy v. Brookshire Grocery Co., 48,177, p. 7 (La.App.2d Cir.6/26/13), 117 So.3d 611, 615 (citation omitted). Therefore, we must determine whether the trial judge’s factual conclusions in this matter had a reasonable factual basis or are clearly wrong.
LAW AND ANALYSIS

Merchant Liability:

The substantive law that governs negligence claims brought against merchants resulting from accidents caused by a condition existing on or in the merchant’s premises is found in La. R.S. 9:2800.6 and provides in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to 18keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C.Definitions:
(1) “Constructive notice” means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
The burden of proof rests with the plaintiff to prove each of the three elements set forth in La. R.S. 9:2800.6(B). See White v. Wal-Mart Stores, Inc., 97-0393, p. 4 (La.9/9/97); 699 So.2d 1081. Thus, to recover against a merchant, the claimant must prove: (1) the condition which caused the injury created a foreseeable and unreasonable risk of harm; (2) the merchant had actual or constructive notice that the condition existed for a period of time prior to the accident; and (3) the merchant failed to exercise reasonable care. Id. Accordingly, we will review each of the required elements to determine whether Mr. Beggs met his burden of proof in this matter.
1 a(l) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
Regarding the first element, Har-rah’s argues that it owed no duty to Mr. Beggs because the wet floor was an open and obvious condition. In support of this assertion, Harrah’s relies on Mr. Beggs’ claims that he saw water on the restroom floor both times he entered.
*923 Generally, a defendant has no duty to protect against an open and obvious hazard. Eisenhardt v. Snook, 2008-1287, p. 5 (La.3/17/09), 8 So.3d 541, 544. The Louisiana Supreme Court has stated that “if the facts and circumstances of a particular case show a dangerous condition should be open and obvious to all who encounter it, then the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff.” Broussard v. State ex rel. Office of State Bldgs., 2012-1238, p. 11 (La.4/5/13), 113 So.3d 175, 184 (citations omitted).
In the present case, although Mr. Beggs may have been aware that there was water on the restroom floor, there is nothing in the record to show that a hazardous condition was open and obvious to all who encountered it. First, Mr. Beggs and Mr. Tyson testified that there were no wet floor signs in place when Mr. Beggs fell, which would have potentially alerted patrons of a dangerous condition. Second, the testimony as to the amount of water on the restroom floor that night varied. Mr. Beggs stated that the floor was 50% covered with water. Mr. Tyson described the floor as damp. Mr. Montgomery noted that the floor had droplets of water. Based on the testimony of the witnesses, it is not apparent that a hazardous condition existed that was open, and obvious to all. Thus, we conclude that the record supports a finding that an unreasonable risk of harm existed and Mr. Beggs’ fall was reasonably foreseeable.
| to (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
The Supreme Court addressed the constructive notice requirement of La. R.S. 9:2800.6(B)(2), stating:
Though there is no bright line time period, a claimant must show that “the condition existed for such a period of time ...” Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden.
Kennedy v. Wal-Mart Stores, Inc., 98-1939 (La.04/13/99), 733 So.2d 1188, 1190-91 (citing White, 97-0393 at pp. 4-5, 699 So.2d at 1084-85) (footnote omitted).
The jurisprudence has further established that plaintiffs may rely on circumstantial evidence to meet their burden of constructive notice. Sheffie v. Wal-Mart Louisiana LLC, 2013-0792, p. 6 (La. App. 5 Cir. 2/26/14), 134 So.3d 80, 84 (citing Davenport v. Albertson’s, Inc., 2000-0685, p. 4 (La.App. 3 Cir. 12/06/00), 774 So.2d 340, 343). “[A] plaintiff is not required to prove by eyewitness testimony that the hazardous condition existed for a certain number of minutes prior to the fall. Instead, the factfinder can reasonably infer from circumstantial evidence that it is more probable than not that the condition existed for such time prior to the accident that it should have been discovered and corrected.” Bassett v. Toys “R” Us Delaware, Inc., 36,434, p. 3 (La.App. 2 Cir. 12/30/02), 836 So.2d 465, 469 (citing Davenport, supra).
Here, as previously explained, the testimony of Mr. Beggs, Mr. Tyson, and Mr. Montgomery demonstrated that the floor of the Smuggler’s Cove restroom was *924 |T1wet to some degree on the night of the accident. Furthermore, Mr. Beggs introduced an employee witness statement prepared by Harrah’s employee Timothy Lewis (“Mr. Lewis”). Mr. Lewis stated that between 10:00 p.m. and 10:30 p.m. he completed a restroom check of the Smuggler’s Cove restroom. He noted a wet floor sign blocking urinal number 2 and a little water underneath the urinal. He asked the restroom attendant, Damien, to get a dry mop and mop it up. Harrah’s presented no evidence that the water was mopped up at that time. At 1:30 a.m., in connection with Mr. Beggs’ accident complaint, Mr. Lewis was called back to the restroom where he observed that the wet floor sign was still in front of urinal number 2. His statement does not indicate whether he noticed water on the floor at that time.
Mr. Beggs testified that when he first visited the restroom, the floor was wet near the urinals, and he almost slipped. At that time, he complained to the blackjack dealer and his friend Ms. Todaro about the condition of the restroom. At approximately 1:30 a.m., an hour and thirty minutes later, Mr. Beggs used the restroom a second time and found it to be in worse condition. Mr. Tyson testified that the Smuggler’s Cove restroom was busy and that it did not take long for the floors to become completely wet with anything.
Although Mr. Beggs did not introduce direct evidence regarding the length of time that the restroom floor was wet, circumstantial evidence was presented at trial that leads us to conclude that it was more probable than not that the wet condition of the floor existed for some time prior to the accident. Thus, we find that Mr. Beggs satisfied his burden to show constructive notice.

(3) The merchant failed to exercise reasonable care.

112The reasonable care required of a merchant was discussed in Dotson v. Brookshire Grocery Co., 2004-083, pp. 2-3 (La.App. 3 Cir. 5/12/04), 872 So.2d 1283, 1285-86 (citing Jones v. Brookshire Grocery Co., 37,117, pp. 8-9 (La.App. 2 Cir. 5/14/03), 847 So.2d 43, 49-50), as follows:
Merchants are required to exercise reasonable care to protect those who enter the store, keep the premises safe from unreasonable risks of harm and warn persons of known dangers. Turner v. Brookshire Grocery Co., 34,562 (La.App. 2 Cir. 4/4/01), 785 So.2d 161; Ward v. ITT Specialty Risk Services, Inc., 31,990 (La.App.2d Cir.6/16/99), 739 So.2d 251, writ denied, 99-2690 (La.11/24/99), 750 So.2d 987; Leonard v. Wal-Mart Stores, Inc., 97-2154 (La. App. 1st Cir.11/6/98), 721 So.2d 1059. Although the owner of a commercial establishment has an affirmative duty to keep the premises in a safe condition, he is not the insurer of the safety of his patrons. Turner, supra; Ward, supra; Tanner v. Brookshire Grocery Company, 29,276 (La.App.2d Cir.4/2/97), 691 So.2d 871. A store owner is not liable every time an accident happens. Turner, supra; Ward, supra; Leonard, supra.
The merchant’s duty of care requires that reasonable protective measures, including periodic inspections, are undertaken to ensure that the premises are kept free from substances or conditions that might cause a customer to fall. See Hardman v. The Kroger Company, 34,-250 (La.App.2d Cir.12/6/00), 775 So.2d 1093; Ward, supra; Stevens v. Winn-Dixie of Louisiana, 95-0435 (La.App. 1st Cir.11/9/95), 664 So.2d 1207. Whether measures taken are reasonable must be determined in light of the circum *925 stances of each case. Hardman, supra; Ward, supra. As noted by the court in Stockwell v. Great Atlantic & Pacific Tea Co., 588 So.2d 1186 (La.App. 1st Cir.1991) (citations omitted), the degree of -vigilance must be commensurate with the risk involved, as determined by the overall volume of business, the time of day, the section of the store and other relevant considerations.
There is no question that Harrah’s has a duty to keep its restroom floors clean and dry. However, the record before us demonstrates that Harrah’s did not take reasonable steps to protect its customers on the night in question.
Specifically, Harrah’s failed to demonstrate that the restroom floor was mopped after the wet floor was first noted by Mr. Lewis between 10:00 p.m. and 11S10:30 p.m. Mr. Lewis reported in his statement that he asked the restroom attendant to dry mop the area, but there is no evidence that the clean-up occurred.
The evidence further indicates that Har-rah’s failed to properly secure the area and/or alert patrons of the hazardous condition. Mr. Beggs and Mr. Tyson both testified that they did not see a wet floor sign in place. Mr. Tyson testified that the wooden wet floor sign, shown in the photograph taken by Mr. Marino after the accident, was not correctly placed. He explained that a yellow sign, not the brown wooden sign, is used inside the bathroom because it is more visible. He further stated that this particular wooden sign was not visible to those entering the restroom because it is facing towards the stall. Mr. Tyson explained that a person would have to walk past the sign to see it.
Based on our review of the record, we find that Harrah’s failed to exercise reasonable care.

Allocation of Fault

In Duncan v. Kansas City Southern Railway Co., 2000-0066, pp. 10-11 (La.10/30/00), 773 So.2d 670, 680-81, the Louisiana Supreme Court summarized the standard for reviewing allocation of fault determinations as follows:
This Court has previously addressed the allocation of fault and the standard of review to be applied by appellate courts reviewing such determinations. Finding the same considerations applicable to the fault allocation process as are applied in quantum assessments, we concluded “the trier of fact is owed some deference in allocating fault” since the finding of percentages of fault is also a factual determination. Clement v. Frey, 95-1119 (La. 1/16/96); 666 So.2d 607, 609, 610. As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. Id. Therefore, an appellate court should only disturb the trier of fact’s allocation of fault when it is clearly wrong or manifestly erroneous. Only after making a determination that the trier of fact’s apportionment of fault is clearly wrong can an appellate court disturb the award, and then only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court’s discretion. 1 u Clement, 666 So.2d at 611; Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1977).
The appellate courts [sic] determination of whether the trial court was clearly wrong in its allocation of fault is guided by the factors set forth in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985). In Watson, we said “various factors may influence the degree of fault assigned, including”:
(1) [Wjhether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the *926 conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fauli/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
Watson, 469 So.2d at 974. These same factors guide the appellate court’s determination as to the highest or lowest percentage of fault that could reasonably be assessed. Clement, 666 So.2d at 611.
Harrah’s argues that the trial court erred in not assigning 100% fault to Mr. Beggs. Harrah’s submits that Mr. Beggs caused his own injuries by waiting until the last moment to go the restroom, thus not allowing time to choose another restroom and in entering the restroom that he described as having a wet floor (which he also noted on his first visit to that restroom) while wearing worn flip flop sandals. Harrah’s also points out the undisputed fact that Mr. Beggs had consumed alcohol prior to his fall.
Mr. Beggs testified that when he entered the restroom the second time, he again noticed that the floor was a mess. He saw no attendant and no wet floor sign in the restroom. Mr: Beggs stated that he tried to be cautious as he approached the urinals, but he slipped anyway. Mr. Beggs explained that he had no choice but to use the Smuggler’s Cove restroom at that time because it was the closest restroom and he had to “go” urgently.
| is After careful consideration of the record, we find that the trial court’s allocation of fault is supported by the evidence and is entitled to deference. Under the circumstances, it is entirely reasonable to conclude that Harrah’s failed to exercise reasonable care in keeping the premises safe. Furthermore, it is also reasonable to conclude that Mr. Beggs should have taken more care to protect himself. We therefore affirm the trial court’s allocation of fault.

Award in Excess of Jurisdictional Limit

La. C.C.P. art. 4843(E) limits the jurisdiction of the First City Court for the City of New Orleans to $25,000.00. Here, the court awarded Mr. Beggs $26,222.56 in damages, and reduced that amount by his 50% comparative negligence. We find this ruling to be in error.
In Bullock v. Graham, 96-0711 (La.11/1/96), 681 So.2d 1248, abrogated on other grounds by Benoit v. Allstate Ins. Co., 2000-0424 (La.11/28/00), 773 So.2d 702, the Louisiana Supreme Court addressed the issue of whether a trial court could award damages in excess of a stipulated amount and then reduce those damages by the plaintiffs percentage of fault, thereby bringing the actual amount awarded within the stipulated limit. The Court ruled that any damages above the stipulated amount were regarded as waived by the plaintiff, and the damage award could not exceed that maximum recoverable amount, and the plaintiffs percentage of fault was to be deducted from the maximum recoverable amount. Id. at 1250. See also Landry v. Allstate Ins. Co., 99-1971 (La.App. 1 Cir. 9/22/00), 768 So.2d 256.
In Williams v. Quinn, 2003-0630, p. 2 (La.App. 3 Cir. 11/5/03), 858 So.2d 873, 873-74 (similar to the case sub judice as it dealt with jurisdictional limit rather than a stipulation to the limit of damages), the Pineville City Court awarded |1fiplaintiff $40,000.00 in damages (in excess of its $35,000.00 jurisdictional limit) before deducting for plaintiffs comparative negligence. On appeal, the Third Circuit Court held that the city court erred. Citing the rationale of Bullock, the appellate court *927 held that the most the city court could have awarded was the jurisdictional limit, and the judgment was amended to award the plaintiff $35,000.00, less his percentage of fault. Williams, p. 3; 858 So.2d at 874.
Considering the above cited jurisprudence, we find that Mr. Beggs’ maximum recoverable amount was $25,000.00, less his percentage of fault. Accordingly, we must reduce the amount of the award. We also note that Mr. Beggs concedes this point in his appellee brief, acknowledging that the award should be reduced to $25,000.00.
CONCLUSION
For the foregoing reasons, we find that the evidence presented at trial was sufficient to support a judgment in favor of Mr. Beggs and against Harrah’s. Moreover, we discern no basis to disturb the trial court’s allocation of 50% comparative negligence on the part of Mr. Beggs. However, because the amount awarded was in excess of the court’s jurisdictional limit, we amend the judgment to award Mr. Beggs $25,000.00, less his percentage of fault, ie., $12,500.00 plus court costs and judicial interest.
AFFIRMED AS AMENDED.

. The judgment awarded $10,000.00 in general damages and $13,111.28 in special damages.

. See La. C.C.P. art. 4843(E).